**Charles RADICH and Howard Walton, Appellants,**

v.

**W. Wilson GOODE, John E. Flaherty, Handsel B. Minyard, John M. Myers, Kevin Tucker, Ralph Teti, John Doe, Richard Doe, and City of Philadelphia, Appellees.**

No. 88–1757.

United States Court of Appeals, Third Circuit.

Argued Feb. 2, 1989.

Decided Oct. 6, 1989.

Charles F. Volz, Jr. (argued), Philadelphia, Pa., for appellants.

Seymour Kurland, City Sol., Richard J. Gold, First Deputy City Sol., Guy P. Vilim (argued), Divisional Deputy City Sol., Lorray Brown, Asst. City Sol., Philadelphia, Pa., for appellees.

Before HUTCHINSON, SCIRICA, and NYGAARD Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellants, Charles Radich and Howard Walton, appeal from an order granting summary judgment against them in an action for damages under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 which alleged that they were arrested without probable cause in violation of their constitutional rights. Appellants essentially raise two issues: whether the district court granted summary judgment prematurely; and, whether the police officer had probable cause to arrest appellants for defiant trespass. Because we conclude that the record shows no dispute of any material facts, that appellants offer no valid reason why summary judgment should have been deferred, and that the arrests were upon probable cause, we will affirm.

### I.

On January 23, 1987, Officer Mieklejohn arrested appellants for defiant trespass. Appellants, pro-life supporters who had been protesting on a public sidewalk, crossed onto a private parking lot to distribute pro-life literature and speak to individuals entering the Northeast Women's Center, Inc. (the Center), a clinic that performs abortions. The parking lot in question, which was delineated by a white line painted on the ground, was posted with a sign which stated that the lot was private property and that the owners denied permission for protesters to come onto the lot. Additionally, Officer Mieklejohn warned appellants that they would be arrested if they crossed onto the parking lot.

Appellant Radich first crossed the line and entered onto the parking lot as he went to his car located in a different parking lot. While he was returning, he approached within fifteen feet of the Center's entrance. At this point, Officer Mieklejohn, because protestors had invaded the Center in the past and because the parking lot owners did not want protestors on the parking lot, warned Radich that he would be arrested if he crossed onto the parking lot again. Within a short period of time, Radich crossed onto the parking lot and approached the clinic entrance. Officer Mieklejohn then arrested Radich for defiant trespass.

When Radich was arrested, appellant Walton, who had also been warned earlier to stay out, crossed the line and entered the lot and demanded to know why Radich was being arrested. Several times Officer Mieklejohn told Walton not to interfere with the arrest and to leave the property. After Walton refused to leave, the officer arrested him for defiant trespass. The charge against each appellant was dropped for lack of prosecution.

Before the arrests, Comly Road Associates, owners of the parking lot, told the city that they were not granting anyone permission to protest on their property. In turn, the City Solicitor's office advised the police department that "the subject property was private, and that since protestors had not been given permission to conduct protest activity thereon, the Department had the right to take appropriate action within their judgment to protect that private property." Affidavit of John Meyers. Then, Officer Mieklejohn's superiors in the police department told him that the parking lot was private property and that the owners had denied the protestors permission to

protest on the lot. Affidavit of Harry Mieklejohn.

Appellants filed their complaint on November 17, 1987 alleging that appellees violated appellants' first, fourth, fifth, eight and fourteenth amendment rights, as well as a variety of pendent state claims. On February 17, 1988, the district court ordered discovery to close on March 22, 1988 and set trial for March 24, 1988. On February 22, 1988, appellees moved for summary judgment; on March 9, 1988, appellants responded. Apparently, the case was then suspended from March 30, 1988 until June 15, 1988 when the court issued an order reactivating it. Brief for Appellees at 3. On June 30, 1988, the district court extended the period for discovery until August 31, 1988 and set the trial for the first week of September. On July 6, 1988, both parties submitted supplemental memoranda on the summary judgment motion. On September 6, 1988, the district court granted appellees' motion for summary judgment and dismissed all pendent state claims without prejudice.

The district court granted summary judgment for all defendants on appellants' Section 1983 claim because it determined that Officer Mieklejohn had probable cause to arrest appellants.[1] The district court relied upon four facts to establish that Officer Mieklejohn had probable cause to arrest appellants for defiant trespass: (a) the sign at the border of the parking lot stated that protestors were not allowed to protest in the parking lot; (b) a line was painted which indicated where the private property began; (c) Officer Mieklejohn previously warned appellants that they were on private property and told them to leave or be arrested; and (d) appellants, in paragraphs 13 and 14 of their complaint, admitted that they were in the parking lot to pursue their protest activities.

## II.

Appellants first argue that the district court committed reversible error in granting summary judgment before appellants were able to obtain answers to their interrogatories. Whether a district court prematurely grants summary judgment is reviewed for abuse of discretion. *Dowling v. City of Philadelphia,* 855 F.2d 136 (3d Cir.1988).

The court must give a party opposing summary judgment an adequate opportunity to obtain discovery. *Dowling,* 855 F.2d at 139. Rule 56(f) of the Federal Rules of Civil Procedure gives the district court discretion to defer ruling on a summary judgment motion when a party opposing summary judgment files an affidavit indicating that it needs more discovery. Rule 56(f) provides,

> (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This circuit generally requires that a party file a Rule 56(f) affidavit in order to preserve the issue for appeal. *Galgay v. Gil–Pre Corp.,* 864 F.2d 1018 (3d Cir.1988); *Dowling,* 855 F.2d 136; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir. 1987); *Falcone v. Columbia Pictures Industries, Inc.,* 805 F.2d 115 (3d Cir.1986); *Mid–South Grizzlies v. National Football League,* 720 F.2d 772 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *but see, Sames v. Gable,* 732 F.2d 49, 52 n. 3 (3d Cir.1984) (court held it was error for district court to grant summary judgment when it knew discovery was still pending even though plaintiffs did not comply with Rule 56(f)). Beyond the procedural requirement of filing an affidavit, Rule 56(f) also requires that a party indicate to the district court its need for discovery, what material facts it hopes to

---

1. The district court also granted summary judgment on the Section 1985 claim, but appellants have not pursued an appeal on that claim.

uncover and why it has not previously discovered the information. *Hancock Industries v. Schaeffer*, 811 F.2d 225 (3d Cir. 1987); *Koplove v. Ford Motor Co.*, 795 F.2d 15 (3d Cir.1986).

Here, appellants did not file a Rule 56(f) affidavit. Appellants contend that their attorney's unverified memorandum opposing the motion for summary judgment complies with the Rule 56(f) affidavit requirement. It does not. Rule 56(f) clearly requires that an affidavit be filed. "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *First Chicago International v. United Exchange Co., LTD*, 836 F.2d 1375 (D.C.Cir.1988) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 298, 88 S.Ct. 1575, 1597, 20 L.Ed.2d 569 (1968)). An unsworn memorandum opposing a party's motion for summary judgment is not an affidavit.

Appellants further argue that they essentially have complied with the remaining requirements of Rule 56(f) and thus we should overlook their failure to file an affidavit and reverse the district court's grant of summary judgment. The argument will not withstand close scrutiny.

Appellees filed their motion for summary judgment on February 22, 1988. Appellants answered the motion on March 9, 1988. In their unverified memorandum opposing the summary judgment motion they make the following contentions:

> Municipal Defendants' Motion, however, in addition to being inappropriate on its merits, is premature. Plaintiffs have filed a set of interrogatories against Municipal Defendants which must be answered ... evidence to be presented on behalf of plaintiffs is incomplete.

> .    .    .    .    .

> [A]ll of the facts are not in yet with reference to the policy underlying the decision of the police department to arrest plaintiffs. What is clear even from the affidavits attached to Municipal Defendants' Motion is that such a policy

existed. It is argued by plaintiffs in consideration of the affidavit of Charles Volz, Esquire, attached hereto and made part hereof as Exhibit "B" that a clear and direct policy of Municipal Defendants to abort the constitutional guarantees of plaintiffs was in existence and was continually enforced and to this day is being enforced by the Municipal Defendants ... The evidence to be presented by plaintiffs would establish that they were arrested in the parking lot of this shopping center merely because they were known by police to be individuals involved in "pro life" activities.

Appendix at 131a–134a.

Appellants' claim of outstanding interrogatories may have been true in March, however, summary judgment was granted in September, and, in the interim, appellants failed to explain whether the interrogatories were still outstanding or why they had been unable to get the interrogatories answered, if that was the case. In fact, in mid-June, 1988, the district court requested the parties to update their research on their respective summary judgment motions. In late June, the district court extended the deadline for discovery until August 31, 1988. On July 6, 1988, appellants responded with their supplemental brief. Nowhere in this supplemental brief do appellants reassert any need for discovery, even though four months had elapsed since they first claimed that interrogatories were unanswered. Further, they did not file a motion to compel answers to their interrogatories; nor were there any other motions by either party which would alert the district court that the interrogatories remained unanswered.

Additionally, the statements made by appellants in their memorandum submitted in March state neither the content of the unanswered interrogatories nor "what particular information is sought, [and] how, if uncovered, it would preclude summary judgment." *Dowling*, 855 F.2d at 140. Furthermore, the statements in the memorandum were not made by a witness or other affiant, but in the course of advocacy by appellant's attorney. We cannot dimin-

ish the value of an affidavit by permitting an attorney's unsworn statement to replace it. The adversary system recognizes the right and practice of attorneys to take adversarial license with evidence and argue it as fact. It does not recognize argument as a surrogate for either evidence or fact. Thus, the statement is lacking both in substance, and in any indicia of evidentiary reliability contemplated by the requirements of Rule 56.

In light of appellants' failure to comply with Rule 56(f), we conclude that the district court did not abuse its discretion in granting summary judgment when it did.

### III.

Appellants next argue that the district court erred in granting summary judgment for appellees based on its conclusion that the officers had probable cause to arrest appellants. Our standard of review is plenary. *Dowling*, 855 F.2d 136.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party is entitled to a judgment as a matter of law if the non-moving party fails to establish the existence of a genuine issue on an essential element of her case on which she has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue is not made unless the evidence, viewed in a light most favorable to the nonmoving party, would allow a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment

may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11. Whether a fact is material is determined by substantive law. *Id.* at 248, 106 S.Ct. at 2510.

To succeed in a Section 1983 action, a claimant must prove that a person acting under color of state law violated the claimant's constitutional rights. *Robb v. City of Philadelphia*, 733 F.2d 286 (3rd Cir.1984). Appellants claim that the City of Philadelphia and Officer Mieklejohn violated appellants' constitutional rights because Officer Mieklejohn arrested them pursuant to a policy of the City to arrest "pro-lifers," and not upon probable cause. Although an arrest without probable cause is a constitutional violation actionable under Section 1983, *Patzig v. O'Neil*, 577 F.2d 841, 848 (3rd Cir.1978), liability can be imposed on a city only when the claimant proves that the unconstitutional arrest was caused affirmatively by a policy of that city,[2] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); and, liability can be imposed on a police officer only if "on an objective basis, it is obvious that no reasonably competent officer would have concluded that" probable cause existed. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The district court granted summary judgment in favor of the city and Officer Mieklejohn because Officer Mieklejohn had probable cause to arrest appellants. The issue before us then is whether, viewing the evidence in a light most favorable to appellants, Officer Mieklejohn had probable cause to arrest appellants, or alternatively, whether appellants suffered a constitutional injury.

Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the [suspect]

---

**2.** The record reveals some evidence of what could arguably be considered a "city policy" with respect to the arrests of appellants. *See e.g.,* Affidavit of John M. Myers (city solicitor's office intended to advise police department that it "had the right to take appropriate action within their judgment to protect that private proper-

ty"). However, since we conclude that no constitutional violation occurred because Officer Mieklejohn had probable cause to arrest appellants, the city cannot be liable. *Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), *quoted in, Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975).[3] Thus, we must determine whether the facts and circumstances would lead a reasonable officer to believe that the offense of defiant trespass had been committed.

The Pennsylvania Defiant Trespass Statute provides, in pertinent part,

(b) Defiant trespasser.—

(1) A person commits an offense if, knowing he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

(iii) fencing or other enclosure manifestly designed to exclude intruders.

(c) Defenses.—It is a defense to prosecution under this section that:

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises;

18 Pa.Cons.Stat.Ann. § 3503.

■ Appellants do not refute that their actions constitute the offense of defiant trespass. They claim, however, that the premises were open to the public and the condition imposed by the parking lot owners is unlawful and consequently the officer had no probable cause to arrest them. Appellants argue that the district court erred when it found probable cause without considering whether they had an affirmative defense. We disagree. The facts and circumstances support the district court's conclusion.

The Pennsylvania Courts have classified Section 3503(c) as an affirmative defense. *Commonwealth v. Downing,* 511 Pa. 28, 511 A.2d 792, 793, 795 (1986); *Commonwealth v. White,* 342 Pa.Super. 1, 492 A.2d 32, 35 (1985). In Pennsylvania, "an affirmative defense is defined as one where the defendant admits his commission of the act charged, but seeks to justify or excuse it." *White,* 492 A.2d at 35. *See, also, Commonwealth v. Rose,* 457 Pa. 380, 387, 321 A.2d 880 (1974). Although the burden of persuasion falls on the Commonwealth to disprove the affirmative defense, the defendant must introduce some evidence in support of the defense. *White,* 492 A.2d at 35–36. Thus, the onus is on the appellants to come forward with facts that support the affirmative defense. *White,* 492 A.2d at 35. Here, appellants must not only show facts which support the defense, but also that a reasonable police officer would know of these facts and conclude that a defiant trespass had not been committed.

To establish the affirmative defense of Section 3503(c)(2), a defendant must introduce evidence showing both that the premises were open to the public at the time of entry and that he complied with all lawful conditions imposed upon access. Accordingly, assuming *arguendo* that appellants are correct that to establish probable cause for arrest under Pennsylvania's defiant trespass statute the arresting officer must consider the statute's affirmative defense, to prove that probable cause was lacking, appellants must demonstrate that the arresting police officer, acting reasonably, would have believed: (1) that the property was "open to the public," and (2) that the appellants were complying with lawful conditions, or that the conditions imposed upon access were unlawful. Here, appellants may be able to show that the parking lot was open to segments of the public.[4] Appellants cannot show, however, that they complied with the condition imposed by the parking lot owners that protesting was for-

---

**3.** The federal standard for probable cause is the proper standard to apply. *Fisher v. Washington Metro. Area Transit Authority,* 690 F.2d 1133, 1138 (4th Cir.1982).

**4.** There is evidence in the record that people other than the business customers of the adjacent business cross into the parking lot.

bidden on the parking lot.[5] Consequently, the success of appellants' claim that they were arrested without probable cause, hinges on whether a reasonable police officer, under the facts and circumstances of this case, would know that the condition was unlawful and therefore, that appellants had an affirmative defense to the defiant trespass statute.

Whether the condition imposed on access to the parking lot under these circumstances is lawful is a question of law not readily answered by precedents applying Section 3503. It is, however, a question we need not answer here; as we have noted, the standard for probable cause turns not on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer *reasonably* believed that the arrestee had committed the crime. To support their claim that the police acted unreasonably, appellants argue that because the parking lot was "open to the public" they had an "unfettered right" under Section 3503 to engage in expressive activity there. Therefore, appellants urge, the prudent police officer would have known that the parking lot owner's prohibition on demonstrations in the parking lot was illegal.[6] Contrary to the appellant's assertions, the Pennsylvania Courts have not clearly interpreted Section 3503 to assure protestors of an "unfettered right" to engage in expressive activity on private property that is "open to the public," as that term appears in Section 3503. In *Commonwealth v. Tate*, 432 A.2d 1382 (1981), the Pennsylvania Supreme Court held that under the Pennsylvania Constitution, a private college could not arbitrarily prohibit persons from distributing political literature on the campus. Therefore, the court held, the affirmative defense to the criminal trespass statute applied to those persons distributing the literature, and

they could not be convicted under Section 3503.

The *Tate* holding rested heavily on the notion that although the university was private, it had created a privately owned forum open to the community at large for expressive activities. The court stated,

> Here we are faced with an educational institution which holds itself out to the public as a community resource and cultural center, allows members of the public to walk its campus, permits a community organization to use its facilities as a forum for a public official of national importance, and at the same time arbitrarily denies a few members of the public the right to distribute leaflets relevant to that forum.

*Id.* at 1387. Accordingly, the *Tate* court drew support for its holding from the California and New Jersey decisions which likewise rested on the premise that the property at issue was a forum either created for or compatible with expressive activity. *See id.* at 1389 (citing *Robins v. PruneYard Shopping Center*, 23 Cal.3d 899, 908, 592 P.2d 341, 153 Cal Rptr. 854, 859 (1979) (state constitution required large shopping center to permit expressive activity on premises) and *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980) (state constitution requires that Princeton University allow distribution of political material on campus)). Additionally, the *Tate* court held that it was not relevant that the protestors had distributed the materials without a permit, as the college's standardless permit requirement was unconstitutional as a matter of state constitutional law. The *Tate* decision did not declare, however, that on every sort of private property "open to the pub-

---

**5.** Appellants concede in their brief that the lot was open to anti-abortion advocates who did not wish to distribute anti-abortion literature.

**6.** Appellants also argue that "mere presence" on private property is not enough to support a conviction for criminal trespass under Pennsylvania law, citing *White* for the proposition that only conduct that constitutes a "breach of the peace" qualifies as defiant trespass. Appellants misread *White*. In that case, the court found

that defendant had complied with all lawful conditions imposed on access, as he "was present [on the property] ... for the explicit purpose for which the area was open." *White*, 492 A.2d at 35. In conclusion, the court stated, "the Commonwealth presented no evidence that defendant had failed to comply with any lawful condition on his entry to access *or* in any other way 'breached the peace.'" *Id.* at 36 (emphasis added).

lic," the citizens have an unfettered right to engage in expressive activities.

Thereafter, in *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331 (1986) (plurality opinion), the Pennsylvania Supreme Court held that privately owned shopping malls may refuse to permit citizens to solicit on premises signatures for political purposes. In so holding, the plurality distinguished a shopping mall owner who "uniformly precludes political activity on his property" and the "public forum" provided by the college in *Tate. Western Pennsylvania*, 515 A.2d at 1336–37. The plurality noted that unlike the college, the privately owned shopping mall "operated as a market place for the exchange of goods and services ... not as a market place for the exchange of ideas." *Id.* at 1337. As the case involved a private injunction rather than criminal prosecution for trespass, two of the judges on the panel of six also suggested that the result might be different if the state were prosecuting a charge of defiant trespass under the same circumstances. *See id.* at 1337 n. 6 (plurality opinion) and at 1340 (Zappala, J., concurring).

This brief survey of Pennsylvania law illustrates that the legality of the condition imposed here is not readily discernable to a police officer making arrests or city official formulating a policy to enforce private trespass rights. We emphasize that appellants were arrested on a parking lot, dedicated not to expressive activity, but to the temporary storage of motor vehicles. A parking lot used only for commercial purposes bears no resemblance to a college campus that has opened its doors to general debate, or even to a shopping mall, where pedestrians assemble and stroll at leisure. Appellants have introduced no evidence to suggest that the parking lot owners have allowed other sorts of protesting activity on the lot or have otherwise operated the property as "a market place for the exchange of ideas." Therefore, under these circumstances, we cannot impose upon a police officer or a city official authorizing the arrest policy the duty to correctly predict how a court will answer this unresolved and complex legal issue. *Cf. Michigan v. De Fillippo*, 443 U.S. 31, 38–39, 99 S.Ct. 2627, 2632–33, 61 L.Ed.2d 343 (1979) (probable cause to arrest existed even where the ordinance was later found unconstitutional because "[a] prudent police officer ... should not have been required to anticipate that a court would later hold the ordinance unconstitutional").

■ Appellants next argue that their arrests violated their first amendment right to freedom of speech. The First and Fourteenth Amendments of the United States Constitution prevent a state from "abridging the freedom of speech." U.S. Const. Amends. I, XIV. The first and fourteenth amendments, however, do not prevent an individual from restricting the exercise of free speech on private property. *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). Private property has been treated as public property for first amendment purposes only when such property has all of the characteristics of a town. *See, Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). In *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131 the court further explained that private property does not "lose its private character merely because the public is generally invited to use it for designated purposes." In this case, the premises are designated as a parking lot. It has not lost its private character and appellants may not invoke the protection of the First and Fourteenth Amendments of the United States Constitution.

■ Appellants' next argue that using the police officer to arrest appellants for exercising their first amendment rights constitutes "state action." This extends the concept of state action too far. Police action to protect private property rights does not thereby subject that private property to first amendment constraints. In a similar situation, the First Circuit has held,

Plaintiffs are attempting to create a first amendment right of access simply from the police involvement in arresting them. This bootstrap argument would turn any arrest in support of private rights into

state action, thereby eviscerating the requirement. *Cape Cod Nursing Home v. Rambling Rose Rest Home*, 667 F.2d 238, 243 (1st Cir.1981). We agree with the First Circuit's analysis and reject appellants' argument.

In summary, appellants were arrested because they failed to heed both the posted signs and the verbal warnings of the arresting officer, who had probable cause to believe a violation of the defiant trespass had occurred. We will affirm.

HUTCHINSON, Circuit Judge, concurring in the judgment.

I believe the appellants adequately preserved their objection that the district court entered summary judgment prematurely. They informed the district court that there was outstanding discovery directed to the appellees' alleged policy to arrest for defiant trespass those engaged in protest activities on the parking lot of the Northeast Women's Center (Center). This policy, however, could only be objectionable if the condition banning protestors from the parking lot was unlawful. Since there was no claim that the discovery was relevant to the openness of the property or any other factor that might bear on the lawfulness of the condition, the district court could have reached the validity of the condition despite the outstanding discovery.

On the merits, I agree with the majority that because there is no clear precedent on the issue, the appellees cannot be held to a duty of predicting whether the Pennsylvania courts will conclude that the condition is unlawful. The arrests were therefore on probable cause and were not violative of federal law. Since the appellants have not pursued their claim under 42 U.S.C.A. § 1985 (West 1981), and since I do not understand them to argue that the defiant trespass statute was selectively enforced, I concur in the judgment.

I.

The majority holds that because the appellants did not submit an affidavit, they have not preserved their objection to the timing of summary judgment. Although Federal Rule of Civil Procedure 56(f) instructs a party who believes that summary judgment should be deferred to file an affidavit, we have not applied this rule woodenly. Especially in light of the unique procedural posture of this case, I would hold that the statements in appellants' memorandum in opposition to the motion for summary judgment constituted sufficient compliance with Rule 56(f).

In *Sames v. Gable*, 732 F.2d 49 (3d Cir. 1984), the defendants, who had earlier sought an order limiting the scope of plaintiffs' written interrogatories, moved for summary judgment. The plaintiffs informed the district court in their opposing memorandum that the parties were engaged in extensive discovery and argued that the defendants should not be permitted to short-circuit discovery simply by denying that they acted for illicit reasons. *Id.* at 50. Four days after the plaintiffs filed their memorandum, the district court denied the defendants' motion to limit discovery. Two weeks later, while the plaintiffs' interrogatories remained unanswered, the court dismissed some claims and granted the defendants summary judgment on the rest.

We vacated the district court's order. We first noted that where facts are in the possession of the moving party, a continuance of a motion for summary judgment routinely should be granted. *Id.* at 51. Although the plaintiffs had not submitted a Rule 56(f) affidavit and had not identified specific outstanding discovery requests essential to their case, we held that "[their] failings [were not] sufficiently egregious to warrant a non-merits resolution of their claims." *Id.* at 52 n. 3. In reaching this conclusion, we noted that the district court was aware of the outstanding discovery:

In this case, the district court granted summary judgment in spite of the fact that plaintiffs' interrogatories remained unanswered by defendants. Indeed, the court had denied defendants' motion to limit the scope of those very discovery requests barely more than two weeks prior to the entry of judgment. Plain-

tiffs had alerted the court in their opposing memorandum that discovery was still underway.

*Id.* at 51–52.

The appellants here also informed the district court that discovery requests remained unanswered. In addition, they noted that further discovery was planned, pointing to an agreement among counsel in eleven related actions in the district court to depose various municipal defendants at the same time. Appendix (App.) at 131a. Similarly, the evidence of any policy was primarily, if not entirely, within the appellees' control. While there was no discovery motion that separately highlighted the fact that the interrogatories remained unanswered, I do not believe this distinction to be controlling given the procedural posture of this case.

Considering the expedited handling of this matter, the district court did not need its attention focused on the possibility that discovery might be incomplete. The court issued a scheduling order dated February 17, 1988 that was entered on February 18, 1988. *Id.* at 2a. It required interrogatories to be filed within five days of the date of the order, with responses due ten days thereafter. It also set a discovery deadline of March 22, 1988 and a trial date of March 24, 1988. Against this backdrop, the district court should have been sensitive to any indication that summary judgment was premature. It was readily apparent that discovery was unlikely to be sufficiently advanced to permit summary judgment by March 9, 1988, the date the appellants filed their memorandum in opposition to the summary judgment motion. The memorandum informed the court that the appellees had not provided necessary discovery and that the appellants planned to conduct depositions. Any function a discovery motion might serve in alerting the district court to outstanding discovery, and thereby to the inappropriateness of summary judgment,

was unnecessary here; given its February 18 scheduling order, the district court should have known that the appellees' summary judgment motion, which was dated February 19 and filed February 22, was likely to be premature.

Indeed, the appellants had no real opportunity to file a motion to compel answers to their interrogatories before their responsive memorandum was due. Under the counting procedures of Federal Rule of Civil Procedure 6, interrogatories were to be filed no later than February 24. Responses would then have been due by March 9. The appellants' memorandum in opposition to the motion for summary judgment was filed on March 9, the day before it was due. *See* E.D.Pa.R. 20(c).[1]

As the majority observes, the appellants did not reassert any additional need for discovery in the supplemental memorandum they submitted on July 6. Majority Opinion, *ante*, at 1394. The majority finds this significant because "four months had elapsed since they first claimed that interrogatories were unanswered." *Id.* In terms of time relevant for this litigation, however, far less time had passed. The case was apparently suspended for two and one-half months of this period. *Id.* at 1393. Since the appellants had no obligation to respond to outstanding discovery during the time the case was suspended, only six weeks that mattered actually elapsed.

Arguably, the supplemental memorandum was also an improper place to advance the fact that the interrogatories remained unanswered. When the district court reactivated the case on June 15, it directed the parties to "update the *research* in their respective summary judgment motion and response if necessary." App. at 37a (emphasis added). I do not deny that a careful litigant might have reminded the district court of the outstanding discovery. I would not, however, fault the appellants for following the terms of the district

---

1. The appellees' memorandum was served by mail on February 19. Pursuant to Eastern District of Pennsylvania Rule 20(c), the appellants had ten days in which to file a response. Since weekends and holidays are not counted in calculating this period, *see* Fed.R.Civ.P. 6(a), and since Washington's Birthday was observed on February 22, the ten days expired on March 7. An additional three days are added to the period because the appellees served their memorandum by mail. *See* Fed.R.Civ.P. 6(e).

court's order by limiting their supplemental memorandum to an update of their research.

Of course, the appellants could have filed a motion to compel answers to the interrogatories between the submission of their original memorandum and their supplemental memorandum. Likewise, they could have filed such a motion prior to the court's September 6 order granting summary judgment. Although this would have reminded the court that discovery was outstanding, I do not believe that the motion was required to preserve the objection. If the appellants had filed a Rule 56(f) affidavit, the district court could have considered the lack of a subsequent motion to compel in determining if summary judgment was premature, but the court would still have been required to exercise its discretion as to whether to defer ruling on the summary judgment motions. Since at the time they were made the appellants' statements were an adequate substitute for a Rule 56(f) affidavit, the district court had the same continuing obligation to exercise its discretion.

I therefore believe that under *Gable* the appellants' failure to file an affidavit is not fatal to their claim that summary judgment was entered prematurely. I turn then to the cases upon which the majority relies in reaching the contrary result. Although each is cited for the proposition that an affidavit is necessary, none provides precedent as persuasive as *Gable.*

In *Galgay v. Gil–Pre Corp.,* 864 F.2d 1018 (3d Cir.1988), the appellants first raised the argument that more discovery was needed in the court of appeals. While we stated that the correct procedure would have been to file a Rule 56(f) affidavit, we had no occasion to consider what might be an adequate substitute. Similarly, *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir.1987) offers little guidance. We merely observed that because the appellants had filed a Rule 56(f) affidavit, they had preserved the objection.

In *Falcone v. Columbia Pictures Indus.,* 805 F.2d 115 (3d Cir.1986), a magistrate stayed certain discovery requests by Falcone and later held that the appellee was not required to answer additional discovery requests pending the outcome of its summary judgment motion. We rejected Falcone's claim that the district court erred in granting summary judgment without affording him an opportunity for discovery because he had not filed a Rule 56(f) affidavit. There was no indication, however, that Falcone had argued to the district court that the discovery was necessary before summary judgment could be entered. Moreover, summary judgment was granted because Falcone had not shown sufficient reliance on his employer's promise, evidence that presumably was within Falcone's control.

In *Mid–South Grizzlies v. National Football League,* 720 F.2d 772 (3d Cir. 1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984), the appellants did not file a Rule 56(f) affidavit. They also did not argue in their memorandum in opposition that summary judgment should be deferred, raising the issue for the first time in their reply memorandum. We noted that most courts have held that an affidavit is necessary to preserve the objection and that the appellants had not taken this step. 720 F.2d at 780 n. 4. Then, treating the statements in the reply brief as an affidavit, we concluded that most of the outstanding discovery was irrelevant and that appellants' Rule 56(f) showing was too speculative to require a continuance. *Id.* at 780. Accordingly, we held:

> Considering the already large record compiled prior to its consideration of the summary judgment record, the absence of a Rule 56(f) affidavit, the irrelevance of most of the pending discovery requests, and the conjectural nature of the Grizzlies' contentions as to the possibility of establishment of actual or potential competition in any arguably relevant market, we conclude that the court did not err in considering the motion for summary judgment on the present record.

*Id.* at 781. *Mid–South Grizzlies* thus relied upon several factors in finding that the district court had not erred in entertaining

the summary judgment motion. It did not present as squarely as *Gable* did the question of whether the failure to file an affidavit should be excused.[2]

Finally, the majority relies upon *Dowling v. City of Philadelphia*, 855 F.2d 136 (3d Cir.1988), another civil rights action seeking redress for allegedly illegal arrests of protestors at the Center. The city sought summary judgment and simultaneously requested a protective order staying depositions except as to facts relevant to the summary judgment motion. Dowling responded to the motion for a protective order by arguing that she needed discovery regarding the city's policy of arresting anti-abortion protestors and by stating that the short discovery period had required her to use depositions rather than written interrogatories. The district court granted summary judgment without ruling on the motion for the protective order.

We affirmed, noting that Dowling had not filed a Rule 56(f) affidavit "and therefore, as a procedural matter alone, she has failed to comply with the rule." *Id.* at 140. Significantly, we concluded that the motion for a protective order did not deprive Dowling of the opportunity to obtain evidence relevant to her response to the summary judgment motion—by its terms, the motion for a protective order was limited to facts not relevant to the summary judgment inquiry. Moreover, "[h]ad Dowling believed that the depositions she sought were essential to her case, she could have somehow brought that fact to the attention of the district court by, for example, filing a motion to compel." *Id.* Dowling also failed to file interrogatories, to seek discovery from the other defendants, to submit her own affidavit or those of other protestors, or to move for an extension of the discovery deadline.[3] We therefore held:

In view of the limits of the terms of the protective order motion, of Dowling's failure to pursue available discovery avenues, and of her failure to comply with Rule 56(f), we conclude that the district court acted within the permissible bounds of its discretion when it ruled on the City's summary judgment motion on the record before it.

*Id.* at 141.

In many respects, *Dowling* presented facts similar to those at issue here. The district court in *Dowling* gave the parties less than two months from the date of the pretrial conference to complete discovery. The city moved for summary judgment within one month of the conference. As Judge Seitz noted in dissent, Dowling also mentioned in her opposition to the summary judgment motion that the city had not provided discovery: " 'As of this writing, Defendant, City of Philadelphia has not provided one iota of discovery that was requested by the plaintiff. There are material issues of fact that only a fact finder can decide.' " *Id.* at 143 (Seitz, J., dissenting) (quoting Dowling's memorandum in opposition to the motion for summary judgment).

Nevertheless, there are important differences between the two cases. While both involved abbreviated discovery timetables, the scheduling order in this case gave the appellants only half the time for discovery as their counterpart had in *Dowling*. Moreover, here the discovery timetable virtually precluded the appellants from filing a motion to compel before their memorandum in opposition to the summary judgment motion was due. *Cf. id.* at 140 (Dowling had opportunity to alert district court to outstanding discovery by filing a motion to compel). The district court did not need to have its attention focused on

---

**2.** To the extent the affidavit requirement is designed to ensure that district courts are alerted to the contention that summary judgment is premature, this purpose was served in *Mid-South Grizzlies*. The district court addressed the contention that summary judgment should be deferred. 720 F.2d at 779.

**3.** At oral argument in this Court, Dowling's attorney explained that she did not put evidence

in the record because she did not believe the city's summary judgment motion could be granted and that she " 'didn't feel that [she] needed any [discovery] in response to the motion for summary judgment.' " *Dowling*, 855 F.2d at 140 n. 3 (brackets in original) (quoting statement by Dowling's attorney at oral argument).

the possibility that summary judgment might have been premature when the motion was filed four days after the scheduling order was entered. Where a month has transpired between the entry of the scheduling order and the summary judgment motion, as in *Dowling*, it is more reasonable to require a party to make a more conspicuous showing by, for example, filing a motion to compel.[4]

In addition, in her memorandum opposing the summary judgment motion Dowling only stated that the city had not provided discovery. The district court could not have determined whether this was discovery to which the city had objected, which by the terms of the motion for a protective order was unnecessary to the summary judgment motion, or whether the discovery was essential to resist summary judgment. Here, however, there was no indication that the unanswered interrogatories might not be relevant to the summary judgment inquiry. Rather, the appellants informed the district court that discovery was outstanding and the issue to which it was related.

Finally, unlike *Dowling*, there is no indication here that the appellants were less than diligent in pursuing discovery. Indeed, they filed interrogatories within the five days permitted by the scheduling order and apparently arranged to depose the appellees. The appellants also supported their response to the summary judgment motion with an affidavit and transcripts of related proceedings in state court.

Accordingly, I believe that *Gable* offers a more compelling precedent on our facts than *Dowling* or any of the other cases cited by the majority. *See also Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989) (although plaintiffs failed to file Rule 56(f) affidavit, argument that summary judgment should not have been entered while discovery remained outstanding was at least facially troubling in light of *Gable;* not relying on absence of affidavit in af-

firming entry of summary judgment). The absence of an affidavit alone should not preclude the appellants from arguing that summary judgment was premature.

I turn next to the claim that the appellants' statements were deficient because they did not state "the content of the unanswered interrogatories [or] 'what particular information is sought, [and] how, if uncovered, it would preclude summary judgment.' " Majority Opinion, at 1394 (quoting *Dowling*, 855 F.2d at 140). The appellants informed the district court that the summary judgment motion was premature because interrogatories remained unanswered, App. at 131a, and that "[a]s was referred to earlier in this brief, all of the facts are not in yet with reference to the policy underlying the decision of the police department to arrest plaintiffs." *Id.* at 133a–34a. The quoted passage identifies the nature of the evidence the appellants hoped to elicit. Considering the early stage of the litigation, I believe this was adequate compliance with Rule 56(f).

When the parties have had the opportunity to conduct discovery, an insistence that one claiming a need for additional discovery specify the information he seeks and how it would preclude summary judgment is a sensible requirement. The party is able to target specific areas of inquiry based on the discovery he has already conducted and to explain why prior discovery was insufficient. It is unreasonable, however, to demand a detailed explanation of the evidence the appellants in this case hoped to discover. The appellants had no real opportunity to conduct discovery and, in terms of specifying how the desired evidence would preclude summary judgment, could do little more than state that it was relevant to one of their theories of recovery. *Cf. J.E. Mamiye & Sons v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J. concurring) (timing of summary judgment motions very important in light of recent Supreme Court decisions; quite

---

4. Defining when a district court should be attuned to the possibility that summary judgment is inappropriate is not always an easy task. On

these facts, however, the district court should certainly have been sensitive to this possibility.

likely that plaintiff would have insufficient evidence to raise triable issue on every element when complaint filed, but we would not want to end case until plaintiff has opportunity to develop facts). While they could have informed the district court of the specific information sought in the interrogatories, I do not think their failure to do so amounts to a waiver of their objection to the timing of summary judgment. *See Gable,* 732 F.2d at 52 n. 3 (even though appellants did not identify specific outstanding discovery requests essential to their case, "[their] failings [were not] sufficiently egregious to warrant a non-merits resolution of their claims").

## II.

Although I believe the appellants adequately preserved their objection, I nevertheless agree that the district court's order should be affirmed. The appellants did not assert in the district court that the unanswered interrogatories were relevant to the affirmative defense, nor do they make such an argument in this Court. The district court could therefore have reached the issue of the validity of the condition that protestors be banned from the parking lot. Although the district court did not in fact reach this issue, the majority correctly concludes, given our standard of review, that we can decide it. In that connection, I must agree with the majority that, on these facts, the appellees cannot be held to a duty to predict whether the Pennsylvania courts would hold that the condition imposed on access to the parking lot were lawful. Since the affirmative defense issue is dispositive, I concur in the judgment.

A policy of arresting protestors at the Center would not ordinarily violate federal law and be subject to redress under 42 U.S.C.A. § 1983, so long as the arrests were made on probable cause. In this case, an inquiry into whether the police officers and city officials reasonably believed that the affirmative defense did not apply is also necessary if the speech protective purposes

of the defiant trespass statute are to be preserved. The appellants presented evidence, consisting of an affidavit and excerpts from state court proceedings, that indicates the character of the parking lot at issue. As the majority ably demonstrates, however, Pennsylvania law is far from clear that banning protestors on the type of parking lot shown by the appellants' evidence is an unlawful condition.[5] I therefore agree with the majority that on this record the appellees cannot be held to have violated any of the appellants' federal rights.

Finally, I emphasize that the appellants have argued that the arrests were violative of § 1983 only because the Pennsylvania statute's affirmative defense to the crime of defiant trespass gave them the right to protest on the parking lot. They have not pursued their claim under § 1985. Similarly, although they indicate that the city's arrest policy was motivated by a hostility to their views in opposition to abortion, they do not argue in this appeal that the appellees have selectively enforced the defiant trespass statute. Any such challenge to the arrest policy would, of course, be based on the contention that the appellees had violated the appellants' rights to equal protection of the laws secured by the Fourteenth Amendment. *See e.g., Wayte v. United States,* 470 U.S. 598, 608 & n. 10, 105 S.Ct. 1524, 1531 & n. 10, 84 L.Ed.2d 547 (1985) (prosecution cannot be deliberately based on arbitrary or improper classification; petitioner must show discriminatory effect and, unless prosecution is based on overtly discriminatory classification, discriminatory purpose); *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (so long as probable cause exists, decision whether to prosecute generally rests in prosecutor's discretion and " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' ")

---

5. Although appellants suggest that they were arrested for their mere presence on the parking lot, they admitted in their complaint that they

were pursuing their protest activities while on that property. App. at 6a; Majority Opinion, at 1393.

(brackets in original) (*quoting Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)); *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886) (where licenses permitting use of wooden laundries were discriminatorily denied to persons of Chinese descent, conviction for violating ordinance overturned); *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.1989) (per curiam) (to prove selective prosecution, one must show similarly situated persons have not been prosecuted and decision to prosecute made on basis of unjustifiable standard or to prevent exercise of fundamental right); *Government of the Virgin Islands v. Harrington,* 791 F.2d 34, 36 (3d Cir.1986) (same); *United States v. Torquato,* 602 F.2d 564, 568 (3d Cir.) (prosecution may not be based on arbitrary or irrational factors), *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979). That constitutional right is not asserted in this appeal, nor have appellants argued that the outstanding discovery was relevant to that issue.

### III.

For the foregoing reasons, I concur in the judgment of the court.