

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2006

# Morrison v. Carpenter Tech Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1922

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Morrison v. Carpenter Tech Corp" (2006). *2006 Decisions.* Paper 562.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/562

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

‾‾‾‾‾‾‾‾

No. 05-1922

‾‾‾‾‾‾‾‾

EDWARD F. MORRISON,

<u>Appellant</u>

v.

CARPENTER TECHNOLOGY CORP.

‾‾‾‾‾‾‾‾

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-06102)
District Judge: Hon. James K. Gardner

‾‾‾‾‾‾‾‾

Argued March 30, 2006

BEFORE: SMITH and  COWEN, <u>Circuit Judges</u>,
and THOMPSON*, <u>District Judge</u>

(Filed:  August 22, 2006 )

‾‾‾‾‾‾‾‾

*Honorable Anne E. Thompson, Senior United States District Judge for the District of
New Jersey, sitting by designation.

Ellis M. Saull, Esq. (Argued)
105 Town Center Road
Suite 1B
King of Prussia, PA 19406

Counsel for Appellant

G. Thompson Bell, III, Esq. (Argued)
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603

John F. Ward, Esq.
Stevens & Lee
620 Freedom Business Center
P.O. Box 62330
Suite 200
King of Prussia, PA 19406

Counsel for Appellee

---

OPINION

---

COWEN, Circuit Judge.

Edward F. Morrison appeals the District Court's order granting Carpenter Technology Corporation's ("Carpenter") motion for summary judgment on his claim for hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to -17, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951-963, and his retaliation claim under Title VII, 42 U.S.C. § 1981, and the PHRA. Morrison also appeals the District Court's two orders denying his

motions for leave to take five depositions outside of the discovery period. For the reasons stated below, we will affirm.

## I.

Because we write only for the benefit of the parties, we recite only those facts necessary to our analysis. Morrison, an African-American, is a former employee of Carpenter. During the course of his thirty years of employment with Carpenter, Morrison worked in several different positions, including that of wire and trash collector in the Bar Finishing Department. In this latter position, Morrison was responsible for collecting waste material from large drums and depositing it into city-owned dumpsters.

Shortly after assuming the position, Morrison began experiencing several problems associated with the presence of inappropriate waste material in the drums. He reported the problems to his department manager and two shift coordinators. He also complained to management about an incident involving a spewing soda can which he found in one of the drums. In a signed and sworn statement, Morrison indicated to management that he believed a Carpenter employee had planted the soda can in one of the drums in order to harm him.

In response to the inappropriate waste material complaint, Area Manager Joseph Pieja conducted waste management presentations at several departmental meetings. In addition, Carpenter conducted a random inspection of all trash and scrap receptacles in buildings seventy-three and ninety-seven, and found no evidence of inappropriate mixing of materials. With regard to the spewing soda can incident, Pieja discussed the matter

3

with Morrison and conducted an investigation, but found no evidence to support his claim.

On April 26, 2002, Morrison found a large cardboard drawing of a man who had an upraised noose around his neck. The drawing was perched on a locker near the thoroughfare used largely for trash and wire material handling. Morrison immediately reported the incident to Area Manager Todd Eckert. Morrison indicated to management that he believed the drawing to be a representation of himself because the man depicted in the drawing allegedly had the facial features of an African-American, such as a broad nose and full lips.

Upon receipt of the report, Eckert related the matter to Tom Reed, Director of Employee Relations, who instructed Neil Culp, Jr., the manager of the Bar Finishing Department, to investigate the incident. As part of that investigation, Culp interviewed twenty-four employees in the Bar Finishing Department, none of whom indicated that they believed the drawing to be a depiction of Morrison. Culp held departmental meetings for each of the three shifts of employees, at which he reviewed Carpenter's policy against workplace harassment and its internal rules prohibiting the posting of unauthorized materials. At the meetings, the employees were given a copy of Carpenter's Harassment and Discrimination Policy and were asked to sign a form acknowledging their receipt of the policy.

In addition, Donald Keim, Manager of Carpenter's Health, Safety and Asset Protection Department, conducted interviews of two contractors and eighteen employees,

4

seven of whom had been interviewed by Culp. Like Culp, Keim found no indication that the drawing was intended to be directed at Morrison.

By letter dated June 15, 2002, Jennie Rodriguez, Carpenter's Manager of Employment Diversity and Employee Relations Specialist, informed Morrison that Carpenter had concluded its investigation of the cardboard drawing incident and had found no evidence of racial harassment connected to the drawing.

Meanwhile, Morrison reported the drawing incident to the Reading Police Department. On the same day, Dennis Brown, Carpenter's Staff Attorney, contacted Officer Chlebowski of the Police Department and asked that the Police Department use him as a point of contact during its investigation. The Reading Police Department never contacted Morrison or Brown regarding the incident, but, instead, closed the case on the very next day.

On August 22, 2002, Morrison received a Corrective Performance Review for allegedly disruptive behavior associated with making a complaint found to be without substance and for failing to report the complaint directly to his manager.

On March 10, 2003, Morrison filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. After an investigation, the EEOC issued a Dismissal and Notice of Suit Rights letter.

On July 1, 2003, Morrison bid on, and was awarded, the position of bar wash operator, which resulted in a 34% pay increase. Morrison continued to work for Carpenter in that position until his retirement, which was effective April 1, 2004.

## II.

On September 24, 2003, Morrison filed a *pro se* complaint against Carpenter alleging a claim for hostile work environment under Title VII and PHRA, and a retaliation claim under Title VII, 42 U.S.C. § 1981, and the PHRA.

On January 6, 2004, during a preliminary telephone settlement conference, the United States Magistrate Judge urged Morrison to retain the services of legal counsel. On February 3, 2004, during the Rule 16 status conference, the District Court also urged Morrison to retain legal counsel. At the end of the Rule 16 status conference, the District Court, with the agreement of the parties, set numerous deadlines, including a discovery deadline of March 31, 2004. The District Court memorialized the deadlines in an order entered on February 6, 2004.

When the discovery period ended on March 31, 2004, Morrison still had not retained counsel. During the discovery period, Morrison served Carpenter with a single request for production of documents.

On May 14, 2004, legal counsel entered an appearance on behalf of Morrison. Two weeks later, Carpenter filed a motion for summary judgment.

On June 11, 2004, approximately two and a half months after the end of the discovery period and nearly one month after counsel had entered his appearance,

Morrison filed a motion seeking leave to take the depositions of five Carpenter employees in order to respond to Carpenter's summary judgment motion. Morrison asserted that he had recently retained legal representation, and, with the aid of legal counsel, determined that he could not properly respond to the motion for summary judgment without the information he expected to obtain as a result of the depositions. Morrison claimed that each of the proposed deponents "possesses vital information regarding the important occurrences that led the Plaintiff to file his Complaint." (App. at 134.)

One week later, the District Court denied Morrison's motion to permit discovery. The District Court reasoned that Morrison had failed to seek an extension of time prior to the expiration of the discovery deadline and had waited almost one month from the date of counsel's initial appearance to file the discovery motion.

On August 12, 2004, Morrison filed a second motion seeking to depose the same five individuals mentioned in the first discovery motion. On August 25, 2004, the District Court granted Carpenter's unopposed request for a continuance of trial, and rescheduled trial for January 10, 2005. On January 5, 2005, the District Court denied Morrison's second motion for leave to take the depositions. The parties were not called for trial during the week of January 10, 2005. Instead, in an order entered February 23, 2005, the District Court granted Carpenter's motion for summary judgment on all counts.

III.

Morrison argues that the District Court erred in denying his two motions seeking leave to take the depositions of five Carpenter employees. As noted above, Morrison

claims that the proposed deponents possess information that would have been essential to his opposition to Carpenter's summary judgment motion.

In seeking leave to take the depositions, Morrison did not expressly invoke the protections of Federal Rule 56(f), which provides that "[s]hould it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit . . . depositions to be taken . . . ." Fed. R. Civ P. 56(f). However, because he sought to take the depositions outside of the discovery period in order to obtain additional facts to support his opposition to Carpenter's summary judgment motion, we conclude that the procedures set forth in Rule 56(f) apply. *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 510-11 (3d Cir. 1994). We review the District Court's denial of his motions under an abuse of discretion standard. *Id*.

Rule 56(f) explicitly provides that a party seeking additional time for discovery must file an affidavit setting forth why the time is needed. *Id*. "We have made clear that, in all but the most exceptional cases, failure to comply with the Rule 56(f) is fatal to a claim of insufficient discovery on appeal." *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002); *Radich v. Goode*, 866 F.2d 1391, 1393 (3d Cir. 1989) ("This circuit generally requires that a party file a Rule 56(f) affidavit in order to preserve the issue for appeal."). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing

8

necessary to assess the merit of a party's opposition." *Id*. at 1394 (citation and internal quotation marks omitted).  An affidavit bears indicia of evidentiary reliability that is lacking in arguments made by counsel in the course of advocacy.  *Id.* at 1394-95.

Beyond the requirement of an affidavit, a party seeking additional time for discovery "must identify with specificity 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'"  *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988)).

Here, Morrison did not submit a Rule 56(f) affidavit with either of his two motions seeking additional time to conduct discovery.  Instead, he relied only upon his counsel's unsworn arguments made in the course of advocacy.

Moreover, even if we were inclined to excuse Morrison's failure to satisfy the affidavit requirement, his motions fail for two other significant reasons.  First, Morrison allowed the agreed-upon two-month discovery period to lapse without making any attempt to take any of the depositions.  In addition, he failed to seek an extension of the discovery period in order to retain counsel.  We generally do not grant relief under Rule 56(f) if the purported need for the additional factual information is attributable to the movant's own lack of diligence during the discovery period.  *See Lunderstadt*, 885 F.2d at 71-72.  Second, in his motions prepared by legal counsel, Morrison failed to identify the particular information he sought to obtain as a result of the depositions.  Morrison's mere statements identifying the elements of his claims and the theories of his case do not

9

satisfy the requirement of specifying the particular information he expected to uncover. *See Pastore*, 24 F.3d at 511.

Under the foregoing circumstances, we cannot conclude that the District Court abused its discretion in declining to grant Morrison's motions seeking the belated discovery.

IV.

We review the District Court's order granting summary judgment *de novo*, applying the same standard as the District Court. *Id*. at 511. Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, we look at all facts in a light most favorable to the non-moving party. *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 680 (3d Cir. 2003).[1]

---

[1] Morrison objects to Carpenter's submission, with its summary judgment motion, of summaries of interviews that Carpenter conducted as part of its investigation concerning the cardboard drawing incident. We agree that the summaries, which were not attached to an affidavit or authenticated in an affidavit, cannot serve as the basis for summary judgment. *See* Fed. R. Civ. P. 56(e). Nevertheless, the actual details of the summaries were immaterial to the issues in the summary judgment motion. Carpenter relied upon the summaries to support its general observation that none of the interviewees found the cardboard drawing to be a depiction of Morrison. (App. at 82-83.) That same observation was made in Rodriguez's letter to Morrison dated June 13, 2002, which Morrison himself submitted to the District Court in support of his opposition to Carpenter's motion for summary judgment. (App. at 205.)

A.

To prevail on a claim for a hostile work environment under Title VII and the PHRA,[2] Morrison must show that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).

Viewing all of the facts and the reasonable inferences therefrom in the light most favorable to Morrison, we conclude that Morrison cannot prevail on his claim for hostile work environment because there is no basis for employer liability. The record evidence demonstrates that Carpenter took prompt and adequate remedial action and the remedial action effectively stopped the alleged harassment. *See id.* at 453 ("In order to establish employer negligence, the plaintiff must show that management knew or should have known about the harassment, but failed to take prompt and adequate remedial action. An effective remedy-one that stops the harassment-is adequate per se." (citations and internal quotation marks omitted)). Conversely, there is no record evidence to support Morrison's conclusory assertion that Carpenter's remedial action was nothing more than a "sham." The remedial action included an extensive investigation involving interviews of dozens of

_____

[2]  The analysis under Title VII and the PHRA is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably. *Weston v. Pennsylvania*, 215 F.3d 420, 426 n.3 (3d Cir. 2001).

employees and several departmental meetings at which management reviewed the company's policy against harassment. Neither Carpenter's counsel's telephone call to the Police Department nor Carpenter's ultimate failure to identify the culprit behind the cardboard drawing shows that Carpenter's overall remedial action was less than genuine.

Because *respondeat superior* liability does not apply, we conclude that the District Court properly granted Carpenter's motion for summary judgment as to the hostile work environment claim. In light of our conclusion, we need not, and do not, consider whether Morrison satisfied the other prongs of his hostile work environment claim.

B.

To establish a claim of retaliation, a plaintiff must show that: (1) s/he engaged in protected employee activity; (2) the employer took adverse action after or contemporaneous with the protected activity; (3) the action would have been materially adverse to a reasonable employee in the plaintiff's position; and (4) there was a causal connection between the protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, -- U.S. --, 126 S. Ct. 2405, 2409 (2006); *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

In *Burlington*, the Supreme Court held that the Title VII anti-retaliation provision extends beyond workplace-related or employment-related acts and harms, but, at the same time, covers only those retaliatory actions that would have been materially adverse to a reasonable employee or job applicant. 126 S. Ct. at 2409. Under the new standard

articulated in *Burlington,* we must consider both "the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position." *Id*. at 2416.

The *Burlington* Court explained that "[t]he anti-retaliation provision protects an individual . . . from retaliation that produces an *injury or harm*." *Id*. at 2414 (emphasis added). In other words, "the challenged action [must be] materially adverse, which in th[e] context [of a retaliation claim] means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (citation and internal quotation marks omitted). The Court also emphasized the importance of applying an objective standard to measure the level of alleged harm in order to avoid uncertainties and unfair discrepancies. *Id*. Whether a retaliatory action is sufficiently serious to meet the materiality and reasonableness requirements "depend[s] upon the particular circumstances." *Id.*

Viewing all of the facts and the reasonable inferences therefrom in the light most favorable to Morrison, we agree with the District Court that Morrison failed to demonstrate the elements of his retaliation claim. Carpenter does not seriously dispute that Morrison engaged in protected activity when he made complaints to management about racial harassment stemming from the cardboard drawing incident which occurred on April 26, 2002. However, Morrison cannot establish the second and third elements of his retaliation claim based upon the corrective performance review he received in August

2002.[3]  He does not identify, much less establish, any harm or injury produced by the corrective performance review.  The review did not result in any economic loss to Morrison or any change to the terms of his employment, and the record is devoid of any facts bearing upon the significance of the single corrective performance review on his professional advancement at Carpenter.  *See id.* at 2415-16 (indicating that a retaliatory action might be materially adverse if it has an effect on "the employee's professional advancement [which] might well deter a reasonable employee from complaining about discrimination").  If anything, the record indicates that the review was not materially adverse to Morrison's professional advancement as he was awarded a new position and a 34% pay increase on July 1, 2003.

In addition, the record contains no evidence to show a causal connection between Morrison's complaints of racial harassment and the corrective performance review.  Morrison received the corrective performance review almost four months after he made his complaint about the cardboard drawing incident.  The timing of the incidents is not sufficiently close to be "unduly suggestive," and there is no "other evidence" suggesting a causal connection.  *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) ("[W]here the temporal proximity [between the protected activity and the adverse action] is not so close as to be unduly suggestive, we have recognized that timing plus other evidence may be an appropriate test.") (citation and internal quotation marks omitted).

---

[3]  Because Morrison did not raise the issue of constructive discharge before the District Court, the issue is waived.

For these reasons, we conclude that the District Court properly granted Carpenter's summary judgment motion.[4]

For the foregoing reasons, the judgment of the District Court entered on February 23, 2005, will be affirmed.

---

[4] As a result of our disposition of this case, we need not reach Morrison's third issue on appeal regarding a jury demand.