Patricia **DOWLING**, Appellant,

v.

**CITY OF PHILADELPHIA,** Northeast Women's Center, Inc., and Humedco Corporation, Pro–Life Coalition of Southeastern Pennsylvania, Counterclaim Defendants.

No. 87–1783.

United States Court of Appeals, Third Circuit.

Argued June 1, 1988.

Decided Aug. 26, 1988.

Rehearing and Rehearing In Banc Denied Sept. 19, 1988.

Theresa M. Connolly (argued), Jenkintown, Pa., for appellant, Patricia Dowling.

Richard C. McNeill, Jr. (argued), Asst. City Sol., Philadelphia, Pa., for appellee, City of Philadelphia.

Edmond A. Tiryak (argued), Philadelphia, Pa., for appellees, Northeast Women's Center and Humedco.

Charles F. Volz Jr. (argued), Philadelphia, Pa., for appellee, Prolife Coalition of Southeastern Pennsylvania.

Before SEITZ, SLOVITER and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Patricia Dowling was arrested by Philadelphia police officers and charged with defiant trespass and criminal conspiracy while she was protesting outside of an abortion clinic in Northeast Philadelphia. After the Philadelphia Municipal Court sus-

tained a demurrer to the criminal charges. Dowling brought a civil rights action against the abortion clinic, its parent company, and the City of Philadelphia, alleging that her arrest and detention violated her constitutional rights and constituted the basis of state law torts as well. The district court gave summary judgment for the defendants. This appeal followed.

## I.

### Background

Dowling filed her civil rights complaint on November 5, 1986 in the Court of Common Pleas against the City of Philadelphia; the Northeast Women's Center, Inc. (NEWC), outside of which Dowling was arrested; and Humedco Corporation, NEWC's parent corporation. The action was removed to federal court.

NEWC and Humedco answered Dowling's amended complaint and asserted both a counterclaim against Dowling and a third-party claim against the Pro–Life Coalition of Southeastern Pennsylvania for trespass and intentional interference with business relations.[1] On April 1, 1987, the City filed a motion for a protective order from certain discovery Dowling sought, together with affidavits of its employees. On the same day, the City filed a motion for summary judgment, relying on Dowling's deposition and a partial transcript of the criminal proceeding containing the testimony of one of the arresting officers. Dowling responded without filing any affidavits. The district court entered an order on November 25, 1987 granting summary judgment to the City, NEWC and Humedco.

On December 11, 1987, the Pro–Life Coalition filed a motion for summary judgment on NEWC's and Humedco's third-party claim. On December 17, 1987, Dowling filed her notice of appeal from the district court's November 25, 1987 order. Five

---

1. NEWC and Humedco labeled their claim against the Pro–Life Coalition a "counterclaim", see App. at 150, and the district court refers to it as a "cross claim", see App. at 159. Because defendants NEWC and Humedco instituted the claim against the Pro–Life Coalition, it is more properly characterized as a third-party claim, see Fed.R.Civ.P. 14(a), and we will refer to it as such.

days thereafter, on December 22, 1987, the district court entered an order granting the Pro–Life Coalition's motion for summary judgment on the third-party claim. Finally, on December 23, 1987 the district court dismissed the remaining claim, NEWC's and Humedco's counterclaim against Dowling.

## II.

### Jurisdiction

■ We consider initially whether we are deprived of jurisdiction because Dowling's appeal was taken from the order granting defendants summary judgment although the counterclaim of two defendants and their third-party claim were still outstanding. The order granting summary judgment was not final because it did not dispose of all the claims between the original parties. Even had the order done so, and hence been final in the traditional sense of finality, the concept embodied in Fed.R.Civ.P. 54(b) of an action as a single judicial unit would have precluded appeal until all other outstanding claims were determined. *See Shirey v. Bensalem Township,* 663 F.2d 472, 474–75 (3d Cir.1981).

However, within a week from the filing of Dowling's notice of appeal, all outstanding claims were disposed of. In *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (per curiam), the Court held that a notice of appeal filed prior to the disposition of a post-trial motion made pursuant to Fed.R.Civ.P. 59 is a "nullity." We have interpreted the Supreme Court's decision as affecting only those cases involving the post-trial motions specifically enumerated in Fed.R.App.P. 4(a)(4), *i.e.,* motions under Fed.R.Civ.P. 50(b), 52(b), and 59. *See Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 185 (3d Cir.1983). Thus, this case does not present a *Griggs* situation.

This court has held that "a premature appeal taken from an order which is *not final* but which is followed by an order that *is final* may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party." *Richerson v. Jones,* 551 F.2d 918, 922 (3d Cir.1977) (emphasis in original). We have followed that practice even after *Griggs. See Cape May Greene,* 698 F.2d at 185; *see also Presinzano v. Hoffman–La Roche, Inc.,* 726 F.2d 105 (3d Cir.1984) (holding, as one of two alternate bases for jurisdiction, that a subsequent ruling on plaintiff's claim under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, cured a premature notice of appeal taken from the court's entry of summary judgment under section 503 of the Rehabilitation Act, 29 U.S.C. § 793); *Knight v. Brown Transport Corp.,* 806 F.2d 479, 483–84 (3d Cir.1986) (district court's dismissal of last remaining claim, a loss of consortium claim asserted against defendant by plaintiff's wife, cured premature notice of appeal).

Our precedent directs us to inquire whether there will be any prejudice to the appellees if we take jurisdiction from a premature notice of appeal. *See Richerson v. Jones,* 551 F.2d at 923. In this case the dangling claims were disposed of by the district court within a week of Dowling's notice of appeal. We see no possibility of any prejudice. Under these circumstances and pursuant to our precedent, we conclude that we may take jurisdiction notwithstanding that the notice of appeal was from an order that did not become appealable until shortly after the filing of the notice of appeal.[2]

## III.

### Discovery

■ We turn next to Dowling's argument that the district court abused its discretion by granting summary judgment to defendants before she had an adequate op-

2. The courts of appeals are divided on the effect of a premature notice of appeal. *Compare United States v. Hansen,* 795 F.2d 35 (7th Cir.1986) (court of appeals lacks jurisdiction over case in which notice of appeal is filed prematurely); *General Television Arts, Inc. v. Southern Rail-*

*way Co.,* 725 F.2d 1327 (11th Cir.1984) (same) *with Alcom Electronic Exchange, Inc. v. Burgess,* 849 F.2d 964 (5th Cir.1988) (court of appeals has jurisdiction over case in which notice of appeal is filed prematurely except in circumstances of Rule 4(a)(4)).

portunity to obtain discovery and while the motion for a protective order was outstanding. To properly assess this contention we must consider the procedural history in some detail.

Dowling's complaint alleges that defendants "knew that they were without probable cause to arrest her," App. at 130, thereby depriving Dowling of her Fifth and Fourteenth Amendment due process and equal protection rights in violation of 42 U.S.C. § 1983 (1982). The complaint further alleges that Dowling's arrest and detention were part of a conspiracy motivated by anti-Catholic animus between the Philadelphia police, the District Attorney's office, NEWC and Humedco to deprive her of her constitutional rights, and that defendants' actions constituted the state law torts of malicious prosecution, false arrest, and false imprisonment.

The district court held a pretrial conference on February 24, 1987 and entered an order on March 2, 1987 which, *inter alia*, set May 1, 1987 as the date for completion of discovery. Defendants took Dowling's deposition on March 11, 1987, and on March 20, 1987 Dowling served defendants with a notice of depositions of eleven City employees and one employee of the corporate defendants. The City employees notice for deposition included the arresting officers, the Police Commissioner, two former Police Commissioners, the Deputy City Solicitor, and a former Deputy City Solicitor.

The City did not produce its employees for deposition. Instead, on April 1, 1987 it filed both a motion for a protective order and a motion for summary judgment. The motion for a protective order, filed on the grounds that the depositions scheduled were overbroad, oppressive and burdensome, sought a stay of Dowling's discovery "save for facts relevant to her response to Defendant's Motion for Summary Judgment." App. at 101.

Dowling stated in her answer to the City's motion for a protective order that she "must use some evidence obtained from defendants in the cours[e] of discovery to meet her burden" as part of her case in chief. App. at 124. Specifically,

she stated that she needed to depose the present and former police commissioners "because Police Commissioner Tucker advised various members of the Pro–Life movement that he was merely continuing the policy of his predecessors in authorizing arrests that were similar to the plaintiff's arrest," and the present and former city solicitors because "there have been numerous references to directives from the City Solicitor to the police regarding the arrest policy of pro-life people." App. at 124. Dowling also explained that "[t]he very short period of time for discovery in this case necessitated the use of depositions rather than written interrogatories." App. at 125.

The district court entered summary judgment for defendants on November 25, 1987, without ever having ruled on the City's motion for a protective order. Dowling now complains that she was deprived an opportunity for discovery and contends that the district court abused its discretion by entering summary judgment for defendants without first ruling on the protective order motion.

The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Costlow v. United States*, 552 F.2d 560, 563–64 (3d Cir.1977). If, however, a party opposing a summary judgment motion believes that s/he needs additional time for discovery, Rule 56(f) of the Federal Rules of Civil Procedure specifies the procedure to be followed. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This court has interpreted Rule 56(f) as imposing a requirement that a party seek-

ing further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained. *See Hancock Industries v. Schaeffer*, 811 F.2d 225, 229–30 (3d Cir.1987) (Rule 56(f) motion, even if treated as an affidavit, insufficient because it failed to explain need for discovery and did not identify particular facts hoped to be uncovered); *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (Rule 56(f) affidavit insufficient because it did not specify what discovery was needed or why it had not previously been secured).

Moreover, "[m]ost courts which have considered the issue agree that filing an affidavit is necessary for the preservation of a Rule 56(f) contention that summary judgment should be delayed pending further discovery." *Mid–South Grizzlies v. National Football League*, 720 F.2d 772, 780 n. 4 (3d Cir.1983) (citing cases), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *see Falcone v. Columbia Pictures Industries*, 805 F.2d 115, 117 n. 2 (3d Cir.1986); *Gray v. Udevitz*, 656 F.2d 588, 592 (10th Cir.1981); *cf. Robin Construction Co. v. United States*, 345 F.2d 610, 614 (3d Cir.1965) (to take advantage of Rule 56(f) party "must state by affidavit the reasons for his inability" to obtain discovery).

Dowling did not file a Rule 56(f) affidavit with her response to the City's motion for summary judgment, and therefore, as a procedural matter alone, she has failed to comply with the rule. Even if we were to treat Dowling's answer to the City's motion for a protective order as a Rule 56(f) affidavit, it would be insufficient because the fact Dowling stated she hoped to uncover would not have precluded summary judgment. *See Hancock*, 811 F.2d at 230.

It obviously would have been preferable for the district court to have acted on the outstanding motion for a protective order before ruling on the summary judgment motion. However, the outstanding motion for a protective order did not alter Dowling's obligation under the federal rules to file a Rule 56(f) affidavit if she believed the outstanding discovery was necessary to her response.

Moreover, there is no basis for Dowling's claim that the mere existence of the City's motion for a protective order deprived her of "the opportunity to obtain any discovery from any original defendant in this case." Dowling's Brief at 15. By its very terms, the City's motion sought only to prevent Dowling from deposing eleven City employees on facts not "relevant to her response to [the City's] Motion for Summary Judgment," App. at 101, and thus explicitly left her free to seek any discovery necessary for her response to the summary judgment motion.

Moreover, the protective order motion did not prohibit Dowling from deposing the employees of either of the corporate defendants, nor from pursuing alternative avenues of discovery from any of the defendants, including the City. It did not prevent her from filing interrogatories or from seeking an extension of the court's May 1, 1987 discovery deadline. Had Dowling believed that the depositions she sought were essential to her case, she could have somehow brought that fact to the attention of the district court by, for example, filing a motion to compel.

Most important, there was absolutely nothing to prevent Dowling from filing her own affidavit and that of other protestors if she had any information that would have created a material issue of fact on a relevant issue. For some inexplicable reason, Dowling chose not to pursue any of these paths and instead did absolutely nothing to obtain discovery from any of the defendants in the approximately seven months that elapsed between the time Dowling filed her answer to the City's motions and the court granted the City's summary judgment motion.[3]

---

**3.** At oral argument before us, Dowling's attorney explained that she had not put any material on the record in response to the City's motion for summary judgment because she believed that "with what [the City] put on the record in front of the district court I couldn't believe that

In view of the limits of the terms of the protective order motion, of Dowling's failure to pursue available discovery avenues, and of her failure to comply with Rule 56(f), we conclude that the district court acted within the permissible bounds of its discretion when it ruled on the City's summary judgment motion on the record before it.

## IV.

### Summary Judgment

■ Our review of the district court's grant of summary judgment for defendants is plenary; that is, we must determine whether there existed any genuine issue of material fact that would permit a reasonable jury to find for Dowling. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The district court's grant of summary judgment was based on its conclusion, after reviewing the materials submitted by the City in support of its motion for summary judgment, that the police had probable cause to arrest Dowling and, therefore, there was no section 1983, section 1985, or state law violation. The parties agree that the existence of probable cause is the threshold issue. The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense. *See Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir.1985); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 907–08 (3d Cir.1984); *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir.1978).

■ The offense of defiant trespass covers any person who, with knowledge that she is not licensed or privileged to do so, enters or remains in any place as to which notice against trespass has been given.[4] The criminal conspiracy statute prohibits an agreement between persons either to commit or to aid in the commission of a crime with the intent of promoting or facilitating the commission of the crime.[5]

The partial transcript of the municipal court criminal proceeding against Dowling on the trespass and conspiracy charges, which the City submitted in support of its motion for summary judgment, included the testimony of Officer Oliverio, one of the officers who arrested Dowling. Oliverio testified that when he arrived on the scene on the morning of Dowling's arrest he showed Dowling and the other protesters where he believed the property line was, and told them that if they crossed it by moving from the public sidewalk onto the grassy area in front of the building

they could get summary judgment," and that she "didn't feel that [she] needed any [discovery] in response to the motion for summary judgment." This approach illustrates why the author of a leading federal practice manual admonishes that "it is clearly perilous for the opposing party neither to proffer any countering evidentiary materials nor file a Rule 56(f) affidavit." 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56–22[2], at 56–773 (2d ed. 1988) (footnote omitted).

4. The defiant trespass statute, 18 Pa.Cons.Stat. Ann. § 3503(b) (Purdon 1983), provides in pertinent part:

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

(iii) fencing or other enclosure manifestly designed to exclude intruders.

5. The criminal conspiracy statute, 18 Pa.Cons. Stat.Ann. § 903(a) (Purdon 1983), provides:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

they would be arrested.[6] Oliverio also testified that he saw Dowling and others cross that property line in order to hand out leaflets to persons entering the building in which the NEWC clinic was housed, despite his repeated warnings that they not do so.

In addition, Dowling stated in her deposition, which the City also submitted, that the police officers warned her when she arrived at the scene on the morning of her arrest that she might be arrested. Although Dowling chose to characterize the police officer's warning as "kidding", App. at 61, she also testified that she witnessed the arrest of at least one other protester who ventured onto the grassy area that the police had warned the protesters not to cross, that she knew that protester was arrested "[b]ecause they didn't want her on the property there," App. at 56, and that she believed that there was "some type of an injunction" in connection with the property in front of the NEWC clinic. App. at 65. Moreover, Dowling admitted that she herself crossed onto the grassy area to attempt to persuade her fellow protester to move and that she remained on the grass

to pass out the Pro–Life Coalition's literature. App. at 56, 57, 59.

In view of this evidence,[7] we conclude that the City amply established that the officers had probable cause to arrest Dowling.[8]

Dowling, in contrast, has utterly "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). It was incumbent upon Dowling to produce evidence to support her allegation, on which she bore the burden of proof, that her arrest was not premised upon the officers' reasonable belief that she had violated the law, but, rather, was part of a policy and conspiracy to violate her constitutional rights. Specifically, Rule 56(e) of the Federal Rules of Civil Procedure requires that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's re-

---

**6.** It is immaterial to the issue before us whether the property on which Dowling was arrested for entering was actually public or private property. Instead, as stated above, the relevant issue is whether the officers who arrested Dowling had a reasonable belief that she had violated the defiant trespass and criminal conspiracy laws. *See Bodzin v. City of Dallas,* 768 F.2d 722, 724 (5th Cir.1985).

**7.** The basis for the additional charge of criminal conspiracy is not as clearly established, but there was substantial evidence of concerted action. Dowling, for example, who admitted protesting at the clinic site once or twice a week for six years for a total of approximately 600 times, App. at 72, consistently referred to her conduct in conjunction with the actions of the other protestors. *See, e.g.,* App. at 70 ("We don't want them [the clinic] in our neighborhood"); *see also* App. at 65. Dowling admitted she was joined by other protestors within a half-hour of her arrival on the morning in question. App. at 129. Officer Oliverio testified to observing the joint and similar actions by Dowling and the other protestors. App. at 85, 88. In any event, because Dowling's principal complaint is directed to the arrest and we have held that there was probable cause for the arrest for defiant trespass, we need not decide whether there would have been probable cause to arrest her for criminal conspiracy alone.

**8.** The statute provides that the offense of defiant trespass is a misdemeanor of the third degree if the order to leave was "personally communicated to him by the owner of the premises or other authorized person. Otherwise, it is a summary offense." 18 Pa.Cons.Stat.Ann. § 3503(b)(2). We deem frivolous Dowling's contention that the arresting officer was not an "authorized person" within the statute. In any event, that issue is relevant not to probable cause but to the degree of the offense.

Dowling and the Pro–Life Coalition argue at length to this court that the police had no probable cause to arrest her because her conduct fell within the protection of 18 Pa.Cons.Stat.Ann. § 3503(c)(2), which provides that "[i]t is a defense to prosecution under this section that ... the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises." However, Dowling introduced no evidence that she was at all times in areas which were open to the public, and therefore failed to meet her burden under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). We note that nothing in the outstanding motion for a protective order would have precluded her from obtaining such information.

sponse, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Tilden Financial Corp. v. Palo Tire Serv.,* 596 F.2d 604, 607–08 (3d Cir.1979); *Robin Construction Co. v. United States,* 345 F.2d 610, 613–14 (3d Cir.1965).

Dowling responded to the City's summary judgment motion merely with a brief answer and five-page memorandum denying the City's contentions and reiterating the allegations of her complaint. She failed to include either any affidavits or any other supporting materials. In this regard, our opinion in *Losch v. Borough of Parkesburg,* 736 F.2d 903 (3d Cir.1984), on which Dowling relies, actually supports defendants' position in this case. In *Losch,* a case in which plaintiff filed a civil rights action based on defendants' initiation of a criminal prosecution against him, the issue was whether there was a genuine issue of material fact as to whether the police had probable cause to institute the criminal proceedings. We reversed the district court's grant of summary judgment to defendants on the ground that the affidavits submitted by plaintiff in response to defendants' summary judgment motion raised a credibility issue that should not have been decided on summary judgment. *Id.* at 908–09. In contrast, in this case, where the City's supporting materials established that the police had probable cause to arrest Dowling, and Dowling put forth no evidence to the contrary, there is no genuine issue of material fact for trial. *See Peterson v. United States,* 694 F.2d 943, 946 (3d Cir.1982); *Fireman's Insurance Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982).

## V.

### Conclusion

Nothing in this opinion derogates from the right of Dowling and others to exercise their First Amendment rights. However, the police have an obligation to take reasonable steps to attempt to insure that protestors do not cross the line between peaceful protest and violation of the law.

Because Dowling has not made any showing that the defendants acted beyond this permissible objective and for the reasons set forth above, we will affirm the order of the district court.

SEITZ, Circuit Judge, dissenting.

I join in the majority's determination that we have before us an appealable order despite the fact that there was no final judgment at the time the notice of appeal was filed. I do so only because reported precedent in our court permits the curing of such a defect under the present circumstances. Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Chapter 8C. Such precedent, in my view, is contrary to the appellate rules, particularly in situations when other matters rendering the judgment final are decided, as here, on an adversarial basis subsequent to the filing of the premature notice of appeal.

I turn now to the basis for my dissent, which I write, in part, for whatever energizing benefit it may have in the future. Given the then posture of the case, I believe the district court's action in granting summary judgment to the defendants was, at best, premature. More specifically, at the time of its decision, the district court had pending before it for a considerable period of time, defendants' opposed motion for a protective order with respect to Dowling's timely notice of the taking of the depositions of several individuals connected with the City of Philadelphia.

It is evident to me that the depositions were potentially relevant, at least in part, to issues asserted in the amended complaint. Had there been a disposition of the motion, any permitted depositions would have been before the district court when it ruled on the summary judgment motion. *See* Fed.R.Civ.P. 56(c). Indeed, in her memorandum in opposition to the motion for summary judgment, Dowling stated: "As of this writing, Defendant, City of Philadelphia has not provided one iota of discovery that was requested by the plaintiff. There are material issues of fact that only a fact finder can decide." It seems

strange indeed to visit on Dowling the possibly negative consequences of the district court's inaction by holding that she was required to invoke the protection of Federal Rule of Civil Procedure 56(f) to avoid what is characterized as a failure to resist the summary judgment motion. I cannot believe under the circumstances that Dowling was required to file an affidavit under rule 56(f) pointing out that noticed discovery was awaiting a ruling on defendant's protective order and that the summary judgment determination should await such ruling.

The majority suggest that Dowling was, in any event, free to pursue other avenues of discovery and that she is, in effect, the victim of her own inaction. There are two fundamental weaknesses in this suggestion. First, it assumes that the discovery sought would not be relevant. That determination was for the district court to make in the first instance. Dowling could then have evaluated where she stood and what course of action to pursue.

Second, and related to the first point, to say that other discovery was available should not foreclose Dowling from relying on the discovery evidence she sought, the protective order aside. Subject to judicial oversight of discovery, a litigant should be permitted to pursue discovery by the means that she believes most useful. If it be suggested that the district court's failure to rule on the motion for a protective order was harmless error, I ask, how can one tell?

Because I would reverse the district court order for failure to timely act on the motion for a protective order, I do not reach the merits of the summary judgment determination.