Jennifer MOBLEY, Plaintiff,

v.

CITY OF ATLANTIC CITY POLICE DEPARTMENT, et al., Defendants.

No. 97–2086 (JBS).

United States District Court, D. New Jersey.

June 24, 1999.

Clifford L. Van Syoc, VanSyoc Law Offices, Cherry Hill, NJ, for Plaintiff.

Karen M. Williams, Jasinski & Paranac, Newark, NJ, Sherri A. Affrunti, Fox Rothchild O'Brien & Frankel, Voorhees, NJ, Samuel Asbell, Asbell & Kushner, Cherry Hill, NJ, for Defendant.

SIMANDLE, District Judge.

This matter is before the court on the motions for summary judgment of defendants Nicholas Rifice, Joseph Fair, Daniel Loen and David Snyder, pursuant to Federal Rule of Civil Procedure 56(b). Plaintiff, Jennifer Mobley, an employee of the defendant Atlantic City Police Department ("ACPD"), alleges that these defendants are liable under 42 U.S.C. § 1983 and N.J.S.A. 10:5–12(e), the "aiding and abetting" section of the New Jersey Law Against Discrimination ("LAD"), for hostile work environment sexual harassment as a result of their involvement in an allegedly inadequate investigation by the ACPD of Mobley's internal complaint of direct sexual harassment by defendant Walter Spears. Because Mobley has not come forward with any evidence from which a reasonable jury could find that these defendants intentionally discriminated against her on the basis of her gender or that they knowingly gave substantial assistance to the allegedly unlawful conduct of the ACPD, the court grants the motions for summary judgment of Rifice, Fair, Loen and Snyder and dismisses the

First and Second Counts of the First Amended Complaint as against them with prejudice.

## BACKGROUND

This civil action arises out of a single incident of alleged sexual harassment and the allegedly inadequate internal investigation of the incident that followed. The following facts are not disputed.

Mobley is employed by the ACPD as a civilian communications operator. In the early morning hours of January 28, 1997, while Mobley was working the midnight to 8:00 a.m. shift, her supervisor, Spears, allegedly exposed himself to her and made several sexually explicit comments to her.

On January 30, 1997, Mobley inquired of another ACPD employee, Patricia Hutchinson, how she should handle the situation. Hutchinson advised Mobley that she would have to report the incident because Mobley had made her aware of it. On January 31, 1997, Mobley officially reported the incident to Margaret Aspenberg, her training supervisor at the ACPD.

The ACPD promptly initiated an investigation of Mobley's internal complaint. As commanding officer of the ACPD's Internal Affairs unit at the time, Fair was responsible for the investigation. He assigned Loen and Snyder to serve as the primary investigators.

On the afternoon of January 31, 1997, Fair and Loen visited Mobley at her home to conduct an initial interview. They provided Mobley with the ACPD's sexual harassment policy, advised Mobley of her right to file a criminal complaint against Spears, and assured her that her employment was protected and that they would conduct a thorough investigation of her complaint. Fair accommodated Mobley's request that her shift be changed to prevent further interaction with Spears. Mobley declined to file criminal charges against Spears.

Fair and Loen also interviewed Spears on the afternoon of January 31, 1997. Spears was advised to avoid interaction with Mobley and was also transferred to another shift to prevent such interaction. Spears denied Mobley's allegations.

Loen and Snyder conducted a follow-up interview of Mobley on February 3, 1997, at which time she gave a detailed narrative of the alleged incident with Spears in a tape-recorded statement. Loen and Snyder also interviewed sixteen witnesses, including several of Mobley's co-workers in the communications department. There were no eyewitnesses to the alleged incident of sexual harassment on January 28, 1997.

On February 13, 1997, Mobley attended an interview with Loen and Snyder at the Internal Affairs unit. During this interview, Loen asked Mobley several questions, in an effort to challenge Mobley's credibility, that Mobley found offensive. Mobley became upset at Loen's questioning and left the interview after less than ten minutes.

By letter dated February 27, 1997, Fair advised Mobley that the investigation had "failed to disclose sufficient evidence to clearly prove or disprove" her allegation. (Loen Ex. K.)

On March 3, 1997, Mobley commenced this civil action by filing a Complaint in the Superior Court of New Jersey, Law Division, Atlantic County, against defendants the ACPD, Spears, Rifice, Fair, Loen, Snyder and numerous John Doe defendants. Rifice removed the case to this court, where it was docketed on April 25, 1997.

On March 30, 1998, Mobley filed a First Amended Complaint. In the First Count of her First Amended Complaint, Mobley alleges that the ACPD, Spears, Rifice, Fair, Loen and Snyder deprived her of equal protection of law in violation of 42 U.S.C. § 1983 by subjecting her to hostile work environment sexual harassment and/or failing to conduct an adequate investigation of her internal complaint of sexual harassment. In the Second Count of her First Amended Complaint, Mobley alleges that the ACPD, Spears, Rifice, Fair, Loen

and Snyder are also liable under the LAD for subjecting her to hostile work environment sexual harassment and/ or failing to conduct an adequate investigation of her internal complaint of sexual harassment. In the Third Count of her First Amended Complaint, Mobley alleges that DiNoto disciplined her for insubordination in retaliation for her having pursued the instant civil action, in violation of her rights under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–2. Rifice, Fair, Loen and Snyder now move for summary judgment.

## DISCUSSION

### A. *Summary Judgment Standard*

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if it is supported by evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if a dispute about it might affect the outcome of the suit under the governing substantive law. *Id.* In deciding whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "When the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment *must* be entered for the moving party." *Turner v. Schering–Plough Corp.*, [53 EPD ¶ 39,896] 901 F.2d 335, 341 (3d Cir.1990).

### B. *Mobley's Application for Further Discovery*

In her brief in opposition to defendants' motions for summary judgment, Mobley argues that the motions are "premature" and should be denied because "critical fact discovery has yet to be completed." (Plaintiff's Br. at 10.) The docket reveals, however, that Magistrate Judge Robert B. Kugler extended the deadline for the completion of factual discovery three times and that Mobley had over a year in which to complete factual discovery between the initial scheduling conference on June 5, 1997 and the June 30, 1998 discovery deadline set forth in the Third and Final Amended Scheduling Order. In a separate Memorandum Opinion and Order issued today, this court has affirmed Magistrate Judge Kugler's denial of Mobley's motion to extend the discovery deadline a fourth time.

Before deciding a motion for summary judgment, a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir.1988). When the party opposing a motion for summary judgment believes more discovery is necessary to oppose the motion, that party must file an affidavit under Rule 56(f) indicating that more discovery is needed. *Radich v.*

*Goode,* 886 F.2d 1391, 1393–94 (3d Cir.1989)(unverified memorandum opposing motion for summary judgment does not satisfy Rule 56(f)'s affidavit requirement); *Dowling,* 855 F.2d at 139–40. The affidavit must specify "what information is sought; how, if uncovered it would preclude summary judgment; and why it has not been previously obtained." *Dowling,* 855 F.2d at 140.

Although Mobley's counsel has not submitted an affidavit as required by the rule, the court construes the aforementioned argument in Mobley's brief as an application under Rule 56(f) to postpone adjudication of defendants' motions for summary judgment to permit Mobley to take additional discovery. *See Miller v. Beneficial Management Corp.,* [60 EPD ¶ 41,841] 977 F.2d 834, 846 (3d Cir.1992)(excusing failure to file Rule 56(f) affidavit where non-moving party argued in briefs that consideration of summary judgment motion should be postponed until crucial depositions had been taken). Mobley, however, has not specifically identified the particular discovery needed to oppose defendants' motions (presumably the depositions of defendants Fair and Loen) or how that discovery would preclude summary judgment for defendants. Most importantly, Mobley has not explained why this discovery has not already been obtained.

██ Rule 56(f) "allows a party who has no specific material contradicting his adversary's presentation to survive a summary judgment motion by presenting valid reasons justifying his failure of proof." 10B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2740 (ed ed.1998). The rule, however, "will not be applied to aid a party who has been lazy or dilatory." *Id.* at § 2741. Thus, courts have routinely denied applications for relief under Rule 56(f) when the party seeking the delay has failed to take advantage of discovery. *Id.* at § 2741, n. 18 (citing cases). That is exactly what Mobley has done in this case. Despite three extensions of the discovery deadline, resulting in a period of more than a year in which to complete factual discovery, Mobley has failed to depose two of the moving defendants, and she has offered no reasonable explanation for her failure to do so. Under these circumstances, Mobley is not entitled to relief under Rule 56(f), and the court will not postpone the adjudication of defendants' motions for summary judgment to permit Mobley to take additional discovery at this juncture of the case.

## C. *Mobley's Official Capacity Claims*

Mobley does not specify in the First Amended Complaint whether she asserts her claims against Rifice, Fair, Loen and Snyder in their official or individual capacities. It is well-settled, however, that "[o]fficial capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(quoting *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "As long as the government entity receives notices and an opportunity to respond, an official-capacity suit is, in all respects other than the name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099 (citing *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)).

In the present case, Mobley has also sued the ACPD as well as the individual defendants. Accordingly, to the extent Mobley has asserted her claims against Rifice, Fair, Loen and Snyder in their official capacities, the court construes these official capacity claims as duplicative of her claims against the ACPD and dismisses them. The court will, however, address the merits of Mobley's claims against Rifice, Fair, Loen and Snyder in their individual capacities.

## D. *Mobley's § 1983 Claims*

In the First Count of her First Amended Complaint, Mobley alleges that Rifice, Fair, Loen and Snyder deprived her of her

Fourteenth Amendment right to equal protection of the laws, in violation of 42 U.S.C. § 1983, by failing to conduct an adequate investigation of her internal complaint of sexual harassment by Spears. Mobley does not allege that any of these defendants participated directly in the sexual harassment that Spears allegedly directed at her. Mobley's claims against these defendants arise solely from their involvement in the ACPD's subsequent investigation of her internal complaint about the Spears incident.

■ To succeed on a claim for denial of equal protection under § 1983, a plaintiff must prove purposeful discrimination. *Andrews v. City of Philadelphia*, [52 EPD ¶ 39,635] 895 F.2d 1469, 1478 (3d Cir.1990); *Foster v. Township of Hillside*, [62 EPD ¶ 42,376] 780 F.Supp. 1026, 1045 (D.N.J.), *aff'd*, 977 F.2d 567 (3d Cir.1992). "[I]n order to establish individual liability for sexual discrimination under § 1983, 'there must be some affirmative conduct by the [individual] that played a role in the discrimination.'" *Foster*, 780 F.Supp. at 1026 (quoting *Andrews*, 895 F.2d at 1478 (citations omitted)). The necessary involvement may be demonstrated by proof of personal direction of or actual knowledge and acquiescence in a subordinate officers's unlawful discrimination, or through proof of direct discrimination by the individual. *Id.* However, a supervisor's mere failure to train, supervise or discipline subordinate officers, absent proof of direct participation by the superior in some unlawful conduct, does not form the basis for a § 1983 claim against the supervisor. *Brown v. Grabowski*, 922 F.2d 1097, 1119–20 (3d Cir.1990), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991).

Furthermore, it is well-settled that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, in *Foster*, the court held that the defendant police officers who were sued as a result of their involvement in an allegedly inadequate internal investigation of a claim of sexual harassment had properly raised the defense of qualified immunity because the courts "had not yet 'clearly established' the proper response required under the constitution" to a sexual harassment claim. *Foster*, 780 F.Supp. at 1046.

Considering the record evidence regarding the ACPD's investigation of Mobley's internal complaint of sexual harassment in light of this standard, the court finds, for the following reasons, that Rifice, Fair, Loen and Snyder are entitled to summary judgment on the First Count of Mobley's First Amended Complaint because no reasonable jury could find these defendants liable for intentional discrimination against Mobley on account of her gender.

*Defendant Rifice*

It is undisputed that Rifice had no personal involvement with the ACPD's investigation of Mobley's internal complaint of sexual harassment by Spears. Indeed, Rifice's non-involvement in the investigation is the basis of Mobley's claim against Rifice:

Q: What do you know on your own that leads you to bring Mr. Rifice into this lawsuit?

A: I know that he was the head, he was the top of everything, and he should have looked into the case also or investigated the case also to see how much merit it had or he should have overseen internal affairs, made sure they did their job, and he didn't.

Q: Well, what did you expect Mr. Rifice to do, specifically?

A: To have a hand in the investigation at least.

Q: Do you know if he had a hand in the investigation?

A: I never heard anything about him having a hand in it, no.

Q: When you say you think he should have had a hand in the investigation, do you think he personally should have been directly involved in investigating the matter?

A: Yes, something of that nature. Yes.

Q: And why do you think he should have been personally and directly involved in investigating your complaint of sexual harassment?

A: Because the department B he's the head of all of that, so therefore he should have made sure that what he was in charge of was working out okay. You understand?

Q: No, I don't.

A: Okay, well, he was in charge. And being as though the people he was in charge of weren't doing their job—or he should have made sure they were doing their job as far as investigating it, as far as anything pretty much. He should have been able to say, "Well, I know they investigated it and I agree completely." And I don't see him ▇ knowing, because he didn't have a hand in it. (Transcript of November 26, 1997 Deposition of Jennifer Mobley ("Mobley 11/ 26/ 97 Tr.") at 82:23 through 84:10.) Under *Andrews* and *Brown*, Rifice's non-involvement in the investigation of Mobley's internal complaint of sexual harassment does not establish his liability under § 1983. On the contrary, under the circumstances of this case, Rifice's non-involvement in the investigation of Mobley's internal complaint of sexual harassment insulates him from liability under § 1983.

### Defendant Fair

As the commanding officer of the ACPD's Internal Affairs unit at the time, Fair was responsible for the investigation of Mobley's internal complaint of sexual harassment. Other than her testimony that she was dissatisfied with Fair's conclusion that there was insufficient evidence to sustain her allegation against Spears, however, Mobley has not come forward with any evidence from which a reasonable jury could find that Fair intentionally dis- criminated against her on the basis of her gender.

Mobley acknowledges that Fair responded quickly to her internal complaint. (Mobley 11/ 26/ 97 Tr. at 107:23 through 108:6.) Mobley also acknowledges that Fair asked questions and appeared to be concerned about the subject matter of the investigation when he visited her home with Loen on January 31, 1997. (*Id.* at 105:8 through 106:7.) Mobley had no further direct contact with Fair regarding the investigation after that initial meeting. (*Id.* at 107:3–22.)

Mobley has not identified any specific act or omission by Fair in support of her allegation that the ACPD's investigation of her internal complaint of sexual harassment was inadequate. Indeed, while she maintains that Fair should have reached a different conclusion upon his review of the witness statements taken during the investigation, Mobley concedes that the officers whom Fair assigned to conduct the investigation interviewed every potential witness she could identify in their search for corroboration of her allegation against Spears:

Q: Did they investigate good enough in your opinion?

A: No.

Q: Why not? What is it that you think they should have done in this investigation that they did not do?

A: They should have found out the truth.

\* \* \* \* \* \*

Q: Okay. Have you prior to today, seen statements taken by the internal affairs investigators in this case about your case?

A: Yes.

Q: Do you know how many they took?

A: No.

Q: Do you know how long they investigated?

A: About two weeks.

Q: And do you think that was a sufficient period of investigation?

A: No.

Q: Did you ever suggest to them, you should talk to Joe? Mary? Frank? Did you tell them who they should talk to, to prove or substantiate your allegations?

A: No. It wasn't my place to tell them.

Q: Well, whether it was your place or not, did you ever suggest to them any individual in the world that they should speak to, to corroborate your allegations?

A: I believe I told them that Oliver Wood seen him sitting in the back of the room, and Monica Brock, B–R–O–C–K, but other than that

Q: Do you know that they spoke to Mr. Wood?

A: Yes, I believe so.

Q: Do you know that they spoke to Miss Brock?

A: Yes.

Q: Anybody else that you had mentioned to them, that they should speak to?

A: No. I don't believe I mentioned anyone else.

\*    \*    \*    \*    \*    \*

■ Q: Okay. So what else did you want these people to do in internal affairs? What else is fair? What else is an effective investigation in your mind?

A: They should have took what they got from the people they did speak to, look at it strongly B I mean closely enough to see B I'm not going to say it was a pattern, but he quite often asked people out. He had to be written a note for him to leave one person alone. They should have looked at that and then came to a conclusion that maybe he did have a problem.

Q: So are you telling me that you're just not happy with the conclusion of the investigation? You just think they were wrong in what they concluded?

MR. FOLKMAN: Objection. Argumentative. You can answer the question.

A: They were wrong in what they concluded.

Q: But that's your beef? That's your objection? That's your problem with this investigation, they came to the wrong result?

A: No, not that then came to the wrong result, but the way they went B I'm not going to say they wan they went about doing it. I can't say that part. But, yeah, pretty much they didn't look at it strong enough or they didn't take enough time to come to the right conclusion.

(Mobley Tr. at 108:7–13; 108:18 through 109:24; 112:3 through 113:8.) Even if for purposes of this motion the plaintiff is entitled to the factual inference that these investigators "failed to take enough time" or "failed to come to the right conclusion," such conduct cannot be found by any reasonable jury to rise to the level of intentional discrimination as required by law, as previously discussed. Under these circumstances, Fair is entitled to summary judgment on Mobley's § 1983 claim.

### Defendant Loen

Mobley's claim against Loen is based on his having challenged her credibility during an interview on February 13, 1997. Mobley gave the following account of the interview during her deposition:

Q: And what was said during that conversation?

A: Quite a lot. You want it all?

Q: Yes.

A: Well, everything I can remember?

Q: Right.

A: He [Loen] asked me did I go to church, and I said, "Yes." He said, "Well, why don't you act like it and stop lying?" And he told me I wanted to be another Donna Hurley. And he asked me if I had ever had a lawsuit against the city, and did I know what kind of trouble I was in. He told me Mr. Spears told him that all he did was grab his crotch, and he asked me what was

wrong with that. That's pretty much all I can remember right now.

(Transcript of November 25, 1997 Deposition of Jennifer Mobley ("Mobley 11/ 25/ 97 Tr.") at 27:19 through 28:9.) Mobley testified that she was offended by Loen's questions and left the interview room in tears. (*Id.* at 30:3 through 32:4.) Mobley estimates that the entire interview took eight to ten minutes. (*Id.* at 29:24 through 30:6.)

Loen's account of the interview is similar. In a February 24, 1997 report to Fair, Loen confirmed that he met with Mobley on February 13, 1997, that the purpose of the interview was "to see if something else occurred on 1–28–97, other than what Ms. Mobley originally stated," that the interview lasted only about ten minutes, and that Mobley "did become upset and left." (Loen Ex. I.) With respect to the substance of his questions, Loen explained as follows:

-I did not tell her that Mr. Spears admitted holding his crotch. I asked her hypothetically, that *if* he admitted holding his crotch in a sexual manner, what would she say

-I did not tell her I feld there was nothing wrong with that gesture

-I asked her if she went to church and told her how important it is to tell the truth

-I did not tell her to- stop lying and stop making things up

-I asked her if she was pursuing this case for the purpose of money and I used Donna Hurley as an example.

(*Id.*)

Loen's questions may have been offensive to Mobley, but the court finds that no reasonable jury could infer intentional discrimination on the basis of gender from them. As the officer assigned primary responsibility for conducting the interviews of the victim, the accused and the relevant witnesses, it was Loen's duty to assess the credibility of each person he interviewed. According to his February 12, 1997 report to Fair about the status of the investigation, Loen had interviewed

Mobley, Spears and sixteen other witnesses by the time he re-interviewed Mobley on February 13, 1997. (*See* Loen Ex. H.) Spears had denied Mobley's allegations, and there were no eyewitnesses to the alleged incident of sexual harassment. (*See id.*) One witness, Margaret Aspenberg, told Loen that Mobley had not always been truthful with her in the past. (*See id.*) Under these circumstances, the court finds nothing unusual about Loen's decision to challenge Mobley's credibility during the February 13, 1997 interview. Further, a reasonable investigator, having unearthed no evidence to corroborate Ms. Mobley's version, is entitled to be skeptical and to ask challenging questions upon the re-interview; a reasonable investigator in Loen's shoes could well believe that such conduct in questioning a complainant violates no well-established federal right.

■ Even if a reasonable jury could infer discriminatory intent from the manner in which Loen questioned Mobley on February 13, 1997, the court finds that Loen is entitled to qualified immunity for his conduct during the course of the investigation. Mobley has not identified any "clearly established" constitutional right that Loen is alleged to have violated. Mobley certainly has a "clearly established" constitutional right to be free from sexual harassment in the workplace, but Loen's questioning on February 13, 1997 does not constitute sexual harassment, especially when considered in the context of the entire investigation. There is no "clearly established" constitutional right to be free from aggressive, skeptical questioning during a sexual harassment investigation. Accordingly, the court finds that Loen is entitled to summary judgment on Mobley's § 1983 claim.

*Defendant Snyder*

Mobley's claim against Snyder is based on Snyder's silence while Loen challenged her credibility during the February 13, 1997 interview. Mobley acknowledges

that Snyder did not play an active role in the interview:

Q: During the entire time that you were at the internal affairs office that day did Detective Snyder communicate with you in any way?

A: No.

Q: He didn't say a word to you?

A: No.

Q: Was there anything about Detective Snyder;s behavior that day that you believe was improper or inappropriate?

A: He didn't behave. He just sat there.

Q: In fact, with respect to this whole incident, did Detective Snyder say or do anything to the best of your knowledge that you believe was inappropriate or improper?

A: I think he could have said some things that B I mean, he didn't do anything, and that's what made it improper. Because when Sergeant Loen was saying all that junk, he could have said, "Well, I don't think you should talk to her like that," or something like that. So by him just sitting there, I believe that was improper.

\* \* \* \* \* \*

Q: Miss Mobley, other than what you just expressed to me, the fact that Detective Snyder sat by while Sergeant Loen said improper things to you B other than the fact that he did nothing that day, is there anything else you feel that was improper?

A: No. He just tolerated everything, sat like a bump on a log, like he had no brain, just sat there.

(Mobley 11/ 26/ 97 Tr. at 33:18 through 34:13; 35:16–24.)

■ The court finds that no reasonable jury could find that Snyder intentionally discriminated against Mobley on the basis of her gender based on his failure to interrupt Loen's questioning on February 13, 1997. As noted above, there was nothing constitutionally improper about Loen's questioning of Mobley in the first place. Accordingly, the court finds that Snyder is

entitled to summary judgment on Mobley's § 1983 claim.

### E. *Mobley's LAD Claims*

In the Second Count of her First Amended Complaint, Mobley alleges that Rifice, Fair, Loen and Snyder are individually liable as aiders and abettors of the ACPD's violation of her right to be free from sexual harassment under N.J.S.A. 10:5–12(e), which declares it an unlawful employment practice and/ or unlawful discrimination "[f]or any person, when an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." As with her § 1983 claim, Mobley's LAD claim is based on the defendants' involvement in the ACPD's allegedly inadequate investigation of her internal complaint of sexual harassment by Spears.

In *Failla v. City of Passaic,* 146 F.3d 149, 158 (3d Cir.1998), the Third Circuit predicted that the New Jersey Supreme Court would incorporate Restatement (Second) of Torts § 876(b) into N.J.S.A. 10:5–12(e) and "find that an employee aids and abets a violation of the LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer." The court declined to adopt a per se rule that an employee's failure to act cannot give rise to aiding and abetting liability under N.J.S.A. 10:5–12(e), noting that "inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement." *Id.* at n. 11 (citing *Dici v. Pennsylvania,* [69 EPD ¶ 44,370] 91 F.3d 542, 553 (3d Cir.1996)). However, the court emphasized its belief that N.J.S.A. 10:5–12(e) imposes a "heightened standard" for aiding and abetting liability:

Employees are not liable merely because they had some role, or knowledge or involvement. Rather, the degree of involvement, knowledge and culpability required as a basis for liability is height-

ened by the standard that the Restatement sets forth and we adopt. Only those employees who meet this heightened standard will be aiders and abettors. It is important that this standard be set above mere knowledge and/ or implementation, lest a reverse *respondeat superior* liability could be created under the guise of aiding and abetting.

*Id.* at 159.

■ Under this standard, the court finds that Rifice, Fair, Loen and Snyder are entitled to summary judgment on Mobley's LAD claims. Just as no reasonable jury could find intentional discrimination on the basis of gender from the record evidence in this case, no reasonable jury could find that these defendants provided substantial assistance to any alleged unlawful conduct by the ACPD from this evidence.

### CONCLUSION

For these reasons, the court grants the motions for summary judgment of defendants Rifice, Fair, Loen and Snyder and dismisses the First and Second Counts of Mobley's First Amended Complaint as against these defendants. The accompanying Order is entered.

### ORDER

THIS MATTER having come before the court on the motions for summary judgment of defendants Nicholas Rifice, Joseph Fair, Daniel Loen and David Snyder, pursuant to Federal Rule of Civil Procedure 56(b), and the court having considered the submissions of the parties, and for the reasons set forth in the accompanying

Opinion;

IT IS on this day of June, 1999, hereby ORDERED that the motions for summary judgment of defendants Rifice, Fair, Loen and Snyder are GRANTED and that the First and Second Counts of the First Amended Complaint are DISMISSED WITH PREJUDICE as to these defendants.