

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2008

# Ginter v. Skahill

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4814

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ginter v. Skahill" (2008). *2008 Decisions.* Paper 322.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/322

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4814

VIRGINIA MAE GINTER;
ANDREW FRANCIS GINTER, her husband,

v.

MICHAEL P. SKAHILL, Trooper;
THE OFFICE OF THE DISTRICT ATTORNEY OF DELAWARE COUNTY;
THE PENNSYLVANIA STATE POLICE DEPARTMENT

Virginia Mae Ginter,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-2444
(Honorable U.S. Magistrate Judge M. Faith Angell)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2008

Before: SCIRICA, *Chief Judge*, McKEE and SMITH, *Circuit Judges*.

(Filed: October 28, 2008)

OPINION OF THE COURT

SCIRICA, *Chief Judge.*

Virginia Mae Ginter appeals the grant of summary judgment in her civil action under 42 U.S.C. § 1983, contending her arrest for possession of a controlled substance, manufacture or delivery of a controlled substance, and possession of drug paraphernalia, violated her constitutional rights. We will affirm.

I.

On August 17, 2001, while patrolling by helicopter, Trooper Michael Skahill and another trooper observed a field with suspected marijuana plants adjacent to the residence of Virginia and Andrew Ginter. The troopers landed and inspected the field, finding plants later confirmed to be marijuana. Andrew Ginter was on his back porch and the troopers approached him; Virginia Ginter was not at the residence.

Responding to the troopers' questions, Andrew Ginter indicated he had licensed firearms in his vehicle and in his residence. He invited the troopers into his home while he retrieved the guns from the house. The troopers observed in the family room, in plain view, a vial with suspected marijuana residues next to a suspected marijuana pipe. Then, while guns were being retrieved from Andrew's vehicle, Trooper Skahill observed aluminum facia and rat poison in the truck. Andrew claimed the items were for home improvement and displayed a Lowe's receipt for these items to the troopers.

The troopers then proceeded along a small path between the Ginters' yard and the marijuana field. While removing the suspected marijuana plants from the field, the

troopers observed plants had been uprooted and wrapped in aluminum facia secured with electrical tape. Rat poison was scattered about the field and a Lowe's bag, containing additional rat poison, was also found in the field. The troopers then departed. Some hours later, Virginia returned home at the same time the police were returning Andrew's firearms.

On October 1, 2001, after verifying the items listed on the Lowe's receipt were the same as those observed in the marijuana field, Trooper Skahill spoke with an Assistant District Attorney to ascertain if there was sufficient probable cause to arrest Andrew Ginter. The Assistant District Attorney believed there was, and Trooper Skahill subsequently obtained a warrant for Andrew Ginter's arrest on charges of possession of a controlled substance, manufacture or delivery of a controlled substance, and possession of drug paraphernalia.

On November 29, 2001, after learning Virginia Ginter co-owned the Ginter residence, the Assistant District Attorney confirmed there was also probable cause for Virginia Ginter's arrest. Subsequently, Trooper Skahill obtained a warrant to arrest Virginia Ginter on charges of possession of a controlled substance, manufacture or delivery of a controlled substance, and possession of drug paraphernalia.

Andrew Ginter pleaded guilty to possession with intent to deliver a controlled substance on June 10, 2002. On June 27, 2002, the charges against Virginia Ginter were withdrawn. On June 4, 2004, Andrew and Virginia Ginter filed a civil complaint under 42

3

U.S.C. § 1983. They contended their constitutional rights had been violated, alleging false

arrest and malicious prosecution.[1]  The District Attorney's office and Trooper Skahill

moved for summary judgment, and the District Court granted the motion on October 17,

2006.[2]  Only Virginia Ginter appeals this decision.[3]

## II.

## A.

In her appeal, Ginter only contends the District Court erred in finding there was

probable cause to support her arrest. (Br. for Appellant, 7).  Before addressing the merits

of this argument, we must first address the timeliness of Ginter's claims. Section 1983

claims are subject to the state's statute of limitations for personal-injury torts. *Owens v.*

*Okure*, 488 U.S. 235, 249-50 (1989).  Pennsylvania's statute of limitations for personal

injury actions is two years. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir.

2003) (citing 42 Pa. Cons. Stat. Ann. § 5524(7)).  When false arrest is the basis of the §

---

[1]The original complaint named three defendants: Trooper Michael P. Skahill, the Office of the District Attorney of Delaware County, and the Pennsylvania State Police Department. The Pennsylvania State Police Department moved to dismiss the complaint. The Court granted its motion on August 4, 2004.

[2]With the consent of all parties, on October 4, 2005, this matter was referred to United States Magistrate Judge M. Faith Angel for all further proceedings and the entry of judgement.

[3]This court has jurisdiction under 28 U.S.C. § 1291. "Our review of the District Court's grant of summary judgment is plenary and 'we must grant all reasonable inferences from the evidence to the non-moving party.'" *Sanford v. Stiles*, 456 F.3d 298, 303 n.3 (3d Cir. 2006) (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)).

1983 action, the statute of limitations normally begins to run at the time of arrest. *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). Claims alleging malicious prosecution do not accrue until charges are dismissed. *Smith v. Holtz*, 87 F.3d 108, 111 (3d Cir. 1996). Accordingly, Ginter's false-arrest claims are time barred because more than two years elapsed between her arrest date, December 12, 2001, and the date the complaint was filed, June 4, 2004. Ginter's malicious prosecution claims are not time barred because they were filed on June 4, 2004, within two years of June 27, 2002, the date the charges against her were dismissed.

B.

Ginter contends the District Court erred in finding her arrest supported by probable cause. To bring a claim of malicious prosecution, "a party . . . must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty v. Shipman*, 91 F.3d 573, 579-80 (3d Cir. 1996) (citations omitted). "A claim of malicious prosecution brought under section 1983 . . . alleges the abuse of the judicial process by government agents." *Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998). Ginter contends Trooper Skahill did not have probable cause to obtain a warrant for her arrest because she was neither at her residence during the search, nor did she own the lot containing the marijuana plants.

5

"[A] district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to the Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (citations omitted). But "a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of the case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 2003) (citations omitted).

Thus, we look to the facts in the light most favorable to the plaintiff to determine whether probable cause did exist. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. Accordingly, "[P]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

Defendant's Affidavit of Probable Cause for Ginter referenced three crimes: possession of a controlled substance, manufacture or delivery of a controlled substance, and possession of drug paraphernalia. (A-26-27). Under the Pennsylvania Crimes Code, Section 780-113(a)(16), (30), and (32), these crimes are defined as:

(16) Knowingly or intentionally possessing a controlled substance . . .

6

(30) . . . manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . .

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of . . . introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(16), (30), (32)

Ginter did not physically possess the marijuana plants or drug paraphernalia, but probable cause may still be established through constructive possession.

In Pennsylvania, constructive possession is "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983). In *Macolino*, the Pennsylvania Supreme Court held "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found." *Id.* at 135. Ownership of a residence is "an important factor in establishing dominion or control over the contraband [found in the residence]." *Jackson v. Byrd*, 105 F.3d 145, 149 (3d Cir. 1997).

Virginia Ginter does not contest she co-owned and resided at the Ginter residence. A reasonable person would assume if she lived at the residence, she would have equal access, power and control over the common areas of the house where the drug residue, receipt and paraphernalia were found. As stated in *Orsatti,* probable cause to arrest is legally sufficient when a "reasonable person" would believe "an offense has been or is being committed by the person to be arrested." 71 F.3d 480, 483 (3d Cir. 2003). "The

7

proper inquiry in a section 1983 claim based on . . . misuse of the criminal process is not whether the person arrested in fact committed the offense, but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

Trooper Skahill had probable cause to believe Ginter possessed the drug paraphernalia and residue because it was found in the family room, a common area of the residence she co-owned and lived in with her husband. Likewise, although the issue is closer, Skahill had probable cause to believe Ginter possessed the plants on the adjacent lot because a receipt was found in the common area of the Ginter residence linking the items found in the lot with the Ginters. These facts were sufficient to cause a reasonable person to believe Virginia Ginter constructively possessed both the plants and paraphernalia. Moreover, Ginter does not point to any affirmative evidence to reasonably support a contrary finding as required under *Orsatti*. Accordingly, Ginter's constitutional rights were not violated.

In the alternative, even if Ginter had established a violation of her constitutional rights, Skahill would be entitled to a defense of qualified immunity. Qualified immunity protects government officials from liability if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Orsatti*, 71 F.3d at 484. Even if a constitutional right was violated, the officer is still entitled to qualified immunity if "the officer's mistake as to what the law requires is

8

reasonable." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Qualified immunity, furthermore, is determined under a standard of objective reasonableness. *Orsatti*, 71 F.3d at 484. Skahill spoke with an Assistant District Attorney before filing his affidavit for Ginter's warrant. (A-35). He was deliberate in acting in accordance with the law. From an objective view, his actions corresponded with the legal advice he received from the Assistant District Attorney. Accordingly, Skahill is entitled to qualified immunity.

For the foregoing reasons, we will affirm the judgment of the District Court.